Hunter L. HARANG, Appellant,

v.

**AETNA LIFE INSURANCE COMPANY**
et al., Appellees.

No. 14696.

Court of Civil Appeals of Texas.

Houston.

Feb. 10, 1966.

Rehearings Denied March 31, 1966.

Phelps, Kilgarlin & Snell, Jim S. Phelps, Houston, for appellant.

Fred Parks, Ruby Sondock, Houston, for Aetna Life Ins. Co., appellee.

Bass C. Wallace, Brian E. O'Neill, Houston, Andrews, Kurth, Campbell & Jones, Houston, of counsel, for Dentist appellees.

WERLEIN, Justice.

This is an appeal from a summary judgment granted appellees. The suit was originally brought by appellant, Dr. Hunter L. Harang, on March 24, 1959, against Aetna Life Insurance Company, a Corporation, Aetna Casualty & Surety Company, a Corporation, Aetna Insurance Company of Hartford, a Corporation, Aetna Insurance Company, a Corporation, Langham, Langston & Burnett, a Corporation, Association or Partnership (designated in appellant's amended petition: Langham, Langston & Dyer), James E. Holt, Orlo James Mack, and Tommy W. Ross, sometimes referred to herein as Aetna Appellees, for actual and exemplary damages growing out of an alleged conspiracy, defamation, and interference with appellant's practice, occurring in 1958, and resulting in the revocation of appellant's membership in the Houston District Dental Society on June 18, 1958, and as a result thereof the deprivation of his right to place his patients in a number of hospitals in Harris County, since such hospitals deny their facilities to those not members of a recognized medical or dental society. On June 22, 1964, appellant filed his first amended original petition in which he added as defendants the following parties: Dr. John O. Wynn, Dr. Percy A. Wynn, Dr. Wayne H. Speer, Dr. Hutton A. Shearer, Dr. Oscar E. Ranfranz, and Dr. Geston M. Platt, who will be referred to herein as Dentist Appellees.

In his second amended original petition filed February 15, 1965, appellant pleaded at great length, and for the first time alleged that on May 27, 1964, there was a meeting at the Safari Club of the Houston Association of Oral Surgeons where were present the same group of dentists and insurance representatives that met in 1958, which meeting was set for the purpose of making sure that appellant never got back into the Houston District Dental Society and also for the purpose of planning to get the Texas State Board of Dental Examiners to bring action to revoke appellant's license. In his affidavit filed May 25, 1965, appellant stated that on April 19, 1964 his membership was voted on and that prior thereto a telephone committee had been set up for the purpose of calling the members of the Houston District Dental Society and to advise them to vote against appellant's readmittance to the membership of the Society.

It is our view that appellant's action against the dentist appellees to recover damages for the alleged overt acts in 1958 growing out of the alleged conspiracy occurring in 1958 was barred by the two or the four year statute of limitations of this State, which were pleaded by the dentist appellees in their first amended answer, and hence a summary judgment was warranted as to such acts. Rule 166A(c), Texas Rules of Civil Procedure, with respect to motions for summary judgments, provides, among other things:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In Temco Feed Mills, Inc. v. Beckner, Tex.Civ.App., 366 S.W.2d 255, writ ref.

it was held that it was proper to grant a summary judgment for the defendant sued upon an action barred by the statute of limitations. In Birdwell v. American Bonding Company, Tex.Civ.App., 337 S.W.2d 120, writ ref., n. r. e., cert. den. 367 U.S. 904, 81 S.Ct. 1920, 6 L.Ed.2d 1250 the Court stated:

"In other words, we are of the opinion that a defendant is entitled to prevail in his motion for summary judgment based upon demonstration that the claim is barred by the affirmative defense of limitation in the absence of the plaintiff's ability to explain and excuse his delay by discharging his correlative burden (shifted to him as the result of the proof by the defendant) of specifying some evidence which would change the result otherwise undoubtedly achieved by the defendant as the moving party. McDonald, Texas Civil Practice, 'Judgments', sec. 17.26.1 '(Summary Judgments)—B. When Summary Judgment Proper'; LeMond and Kreager's article on 'The Scope of Pleading as Proof in Summary Judgment Procedure', 30 Tex. Law Review, pp. 613–619."

The record shows that plaintiff initially filed suit against the Aetna Appellees on March 24, 1959, but he did not join the dentist appellees until June 22, 1964. Appellant admits in effect that the two year statute of limitations applies to a conspiracy suit. He is apparently predicating his cause of action entirely upon the alleged conspiracy as shown by his statement on page 49 of his brief, as follows:

■ "In this case we have alleged a conspiracy and in the alternative that the Defendants have libeled and slandered the Plaintiff, as well as interfered illegally in his right to conduct his profession. We will not even attempt to cover the alternatives in this brief." In view of appellant's statement, this appeal is limited to the conspiracy complaint.

Appellant cites the case of Steiner v. 20th Century-Fox Film Corp., 9th Cir. 1956, 232 F.2d 190, 194, 195, to the effect that "The statute of limitations in a civil conspiracy runs from the commission of the last overt act alleged to have caused damage." The Court in the Steiner case said:

"The overt acts alleged in this case concern the lease terms obtained by appellees in 1935, 1936, and 1937. The options to renew received in 1938 and the closing of the Larchmont Theatre in 1952 are also claimed to be overt acts. Only the closing of the theatre is sufficient to bring the complaint outside the bar of the three-year California statute of limitations."

■ We are of the opinion that each continued invasion of the plaintiff's interest causing loss and damage in a conspiracy case is in effect a new cause of action, and the statute of limitations begins to run when it occurs. See Radio Corporation of America v. Rauland Corp., D.C., 186 F. Supp. 704, 707, and authorities cited.

In Northern Kentucky Tel. Co. v. Southern Bell T. & T. Co., 6th Cir. 1934, 73 F. 2d 333, 97 A.L.R. 133, the Court used the following language:

"In the instant case there are no overt acts alleged to have been committed within one year prior to the filing of the action. In Nalle v. Oyster, 230 U.S. 165, at page 182, 33 S.Ct. 1043, 57 L.Ed. 1439, it was said to be a well-settled rule that no civil action will lie for a conspiracy unless there be an overt act that results in damage to the plaintiff. A necessary corollary to this rule would seem to be that, when there is an overt act, or the last of a contemplated series of overt acts, the cause of action accrues and the statute of limitations begins to run. If this were not true, then it would result that, in every case where damages resulting from a wrongful act are in their nature continuing, there would be no limitation upon the right of action, and the beneficent purpose of the statute to put a period to the right to sue would be defeated. This would apply equally whether the one-year or the five-year statute governed. We con-

clude that the plaintiff's action is barred, and it becomes unnecessary to consider the other questions in the case."

Appellant has set out only one alleged overt act occurring within two years prior to the time the dentist appellees were joined as parties in the suit on June 22, 1964 and one overt act alleged to have occurred subsequent to the time the dentist appellees were joined. The first of these alleged acts was described in appellant's affidavit as occurring at a meeting of the Houston Society of Oral Surgeons at the Safari Club in May of 1964, as follows: "Plans were even made at this meeting at the Safari Club for the taking of my license and having my office privileges in the Medical Towers Building taken away from me." In another affidavit appellant stated in substance that at a regular monthly meeting of the Houston District Dental Society in April, 1965, a paper was read by the defendant, Hutton A. Shearer, as a representative of all the dentist appellees, to request the Houston District Dental Society to continue to refuse appellant membership in said organization. In such affidavits appellant recited that he had personal knowledge that such incidents occurred. The fact is, however, that he could not have had personal knowledge of the complained of proceedings at said two meetings since he was not a member of either group, nor was he present at either meeting. In one of his affidavits in which appellant referred to the alleged meeting at the Safari Club in 1964 and the meeting of the Dental Society in 1965, he stated: " * * * these same doctor defendants arranged it so that I was not allowed to attend the meetings."

The law is well settled that an affidavit based on hearsay is insufficient to warrant the overruling of a motion for summary judgment. See Sparkman v. McWhirter, Tex.Civ.App., 263 S.W.2d 832, writ ref. Nowhere in his affidavits does appellant allege he was present at said meetings in June, 1964 and April, 1965. He swore just to the contrary. His affidavit was obviously based upon hearsay, and cannot be construed as raising a genuine fact issue. See Drake v. First National Bank, Tex.Civ.App., 254 S.W.2d 230. Furthermore, appellant has failed to allege any overt act which occurred as a result of the meeting at the Safari Club in May, 1964. In a civil conspiracy, as stated in the Steiner case, supra, the statute of limitations runs from the commission of the last overt act alleged to have caused damage. In the instant case appellant has failed to allege an overt act, much less an overt act causing damage, since plaintiff's license has not been revoked nor have his office privileges been taken from him.

In his affidavit of May 25, 1965, appellant states that there were 200 dentists present at the meeting held in April, 1965, and further that the defendant doctors had a telephone committee working to get members out to vote, and that appellant's application for membership was denied. It was shown by affidavits of those present at the meeting that the vote was approximately 80% against readmission of appellant. Appellant's statement with respect to the telephone committee is manifestly based only upon hearsay and would, therefore, be inadmissible. Appellant's global statement that the facts sworn to by him are upon his own experience and facts told him by the party defendants fails to show what was told him or by whom or when. But even if such statement can be considered at all, it relates to matters either barred by limitation or which fail to show any overt act resulting in damage.

The trial court recited in his judgment, among other things, that:

"The Court having considered the pleadings and depositions on file herein, the Motions of all Defendants for Summary Judgment together with all supporting Affidavits of said Defendants, and the Court having likewise considered Plaintiff's Contest to the Motions for Summary Judgment of all Defendants as well as all of the affidavits attached to Plaintiff's Contest to

Defendants' Motions for Summary Judgment and having considered also the Affidavits filed by Plaintiff prior to and during said hearing, and the Court on the afternoon of May 25, 1965, having granted leave to Plaintiff to file one additional affidavit on said day, which Affidavit is the one with exhibits "A", "B" and "C" attached thereto, and the Court having considered all arguments of counsel offered during said hearing, which hearing was concluded shortly prior to 12 o'clock noon on May 25, 1965, and the Court being of the opinion that there is no genuine issue as to any material fact and that all the Defendants herein are entitled to Judgment as a matter of law * * *"

Judgment was signed and entered by the court on May 31, 1965. Prior thereto on May 28, 1965, the court on motion of the dentist appellees entered a written order confirming the court's oral order of May 24, 1965, which permitted and authorized the filing nunc pro tunc of affidavits supplementing the affidavits previously filed in behalf of the dentist appellees, so as to change the form of the jurat on said affidavits and to include an appropriate paragraph showing that the same were made upon personal knowledge of the affiants. Pursuant to such order supplemental affidavits were filed nunc pro tunc as of the date of the original affidavits of the dentist appellees.

Appellant contends that the affidavits of said dentist appellees and others could not be considered because filed too late. There may be some question as to whether the original affidavits that had been filed sufficiently showed that they were made upon the personal knowledge of the dentist appellees. Although they do not state in so many words that they were made by the dentist appellees as of their own knowledge, they do indicate that they were so made. In Osborne v. Dean, 359 S.W.2d 550, Tex. Civ.App., the court said:

"Though we believe a more strict compliance with the stated rule would be better form we hold the affidavits on their faces show that they were made on personal knowledge of the affiants and that they were competent to testify to the material matters stated therein. * * *"

It should be noted that the supplemental affidavits were filed prior to entry of judgment. The court may permit supplements to affidavits filed in a summary judgment proceeding. See Lobit v. Crouch, Tex.Civ.App., 293 S.W.2d 110, writ ref., n. r. e.; De La Garza v. Ryals, Tex. Civ.App., 239 S.W.2d 854, writ ref., n. r. e.; Rule 166–A(e), T.R.C.P. Furthermore, a trial court has control over its judgment until it becomes final by operation of law, and during such time the court could on its own motion or motion of a party, vacate, modify, correct or reform such judgment, or grant a new trial. Bergman v. West, Tex.Civ.App., 262 S.W.2d 435. The trial court did not err in giving appellees permission at the time of the hearing to file supplemental affidavits or in confirming such oral permission by written order before entering the summary judgment. There was no change in the substance of the affidavits. Moreover, appellant is scarcely in a position to complain of the alleged late filing by appellees of affidavits, since at the conclusion of the hearing he requested and obtained permission to file an additional affidavit as shown by the recitation in the court's judgment hereinabove set out, and such affidavit and designated exhibits were filed.

We have concluded, for the reasons above stated, that the dentist appellees have shown that there is no genuine issue of material fact with respect to any conspiracy or other alleged cause of action against them.

In his contest to the motions for summary judgment, appellant stated that he was in accord with the motion for summary judgment filed by Aetna Insurance Company, Aetna Insurance Company of Hartford, Langham, Langston & Dyer and the Estate of James E. Holt. The question for determination, therefore, is whether there is any

genuine issue of material fact as to a conspiracy between the remaining Aetna appellees and the dentist appellees to bring about the revocátion of appellant's membership in the Houston District Dental Society and thus keep him from placing his patients in certain hospitals in Harris County.

In an effort to show that there was such conspiracy appellant took the oral depositions of appellees, Orlo James Mack, and Tommy Woods Ross, respectively Claim Manager and Claim Representative in Houston, for Aetna Casualty & Surety Company, at the time of the alleged conspiracy in 1958. Whenever appellant undertook to elicit from either of such appellees any information pertinent to the alleged conspiracy, appellees' counsel would instruct the witness not to answer. In the deposition of Mr. Mack covering some 63 pages such witness was instructed some 97 times not to answer. As a result of such instructions, the witnesses refused to answer and appellant was unable to prove anything by them other than that they were employees of Aetna Casualty & Surety Company and that they had made an investigation to check on the services rendered certain of appellant's patients and the amounts charged therefor and the claims made upon Aetna with respect thereto.

■ Appellant contends that the trial court erred in granting motions for summary judgment after said appellees refused to give testimony when their depositions were being taken since such refusal made it impossible for him to set forth with any more certainty the evidence relative to the conspiracy upon which his cause of action is based. Appellant had a very simple remedy to which he could have resorted in obtaining the testimony of said appellees. Rule 215a, Texas Rules of Civil Procedure, provides in substance that if a party or other deponent refuses to answer any question propounded upon oral examination, on reasonable notice to all persons affected thereby, either party may apply to the court in which the action is pending for an order compelling an answer, or for an order requiring the remainder of the deposition to be taken before the judge of such court. Appellant failed to comply with such requirement and hence he is in no position to assert that there was error on the part of the trial court.

In order to determine whether the trial court erred in granting the summary judgment in favor of the remaining Aetna appellees, it is necessary to determine whether appellant raised any genuine issue of material fact in his own affidavits and pleadings with respect to a conspiracy. Appellees' pleadings and affidavits furnish no proof thereof, nor do the depositions which he undertook to take. Appellant filed two affidavits on May 24, 1965, the day set for hearing the motions for summary judgment, and two the following day. We have assiduously examined each of such affidavits and also appellant's contest to the motions for summary judgment in an effort to separate facts based upon knowledge from hearsay, opinions and conclusions. We shall not try to designate the affidavits in which the statements herein set out are contained, but shall treat them as one affidavit.

After denying certain statements made in the affidavit of appellee, Orlo James Mack, appellant stated as of his own knowledge in his affidavit that said appellee and appellant talked on several occasions and that said appellee threatened that if appellant did not discontinue putting patients in hospitals for oral surgery, he would begin an investigation of appellant's practice and charges, and he would certainly cause appellant trouble. Appellant also stated that said appellee complained that appellant's practice was costing the insurance company too much money, and was running up his loss ratio, and that his home office had told him that the loss ratio must be reduced.

Appellant further stated that he personally checked the hospital records of each of his patients whose cases were questioned by appellees and he found in each of those hospital records an assignment of benefits whereby the hospital was given permission to give to Aetna Life Insurance Company

any information desired in connection with their records, that such assignments of benefits were given to the Aetna Life Insurance Company; and that since the hospital records all contained the assignments of benefits records, it shows that the records of appellant's patients were obtained from the hospital at the request and with the consent of appellee, Aetna Life Insurance Company, since no one could obtain such records from the hospitals without first getting the assignment of benefit forms from said company; that he discussed with appellee Mack the investigation that was being conducted, and he (Mack) admitted that he was having the investigation made of appellant's patients, and admitted that one of the persons making the investigation was his employee, appellee Tommy W. Ross; that the meeting between the representatives of Aetna and the oral surgeons was conducted on May 15, 1958 for the purpose of furthering the conspiracy made the basis of appellant's cause of action.

He also stated that on or about May 15, 1958, the oral surgeons met with the representatives of the insurance company, such representatives now being identified as Charles Holmans and Charles Eaton, who were representatives of the appellees, Aetna Life Insurance Company and Aetna Casualty & Surety Company, and that appellant was at the meetings and heard the dentist appellees say that they were representatives of the Aetna Life Insurance Company who met with them; that appellee Mack, who was in charge of the Claims Department of the appellees, Aetna Life Insurance Company and Aetna Casualty & Surety Company, went to the hospitals and made checks of the hospital records where appellant had been performing operations, and following such investigation said appellees, acting through their employees and agents, in main appellee Mack, prepared a set of written charges against appellant, which charges are as follows:

" 'Between November 10, 1955 and May 30, 1957, Dr. Hunter L. Harang, oral surgeon, 716 Medical Arts Building, Houston, Texas, in submitting claims for surgical benefits under assignments received by him from beneficiaries under group hospitalization and surgical benefits insurance policies, represented in eleven separate cases that he had surgically extracted four impacted and imbedded wisdom teeth. In nine of these eleven cases he further represented that he had found and surgically removed an osteoma of the maxilla, a cyst of the mandible, or both. In each of the eleven cases a bill or statement was submitted for the surgery which Dr. Harang represented he had performed and, in each case, payment was made by the Aetna Life Insurance Company directly to Dr. Harang in accordance with the benefits payable for the described procedure under the applicable insurance policy.

" 'In eight of the above mentioned eleven cases hospital records, prepared in the handwriting of Dr. Harang, describe substantially the same surgery which he represented to the Aetna Life Insurance Company he had performed.

" 'WHEREAS, in truth and in fact, Dr. Hunter L. Harang had extracted fewer than four impacted and imbedded wisdom teeth in each of the eleven cases mentioned above and, in the majority of those cases, his patients were unaware of any surgical procedure beyond the extraction of teeth.

" 'AND WHEREAS, in truth and in fact, at the hospital in which eight of the above operations were performed, Dr. Hunter L. Harang was the only oral surgeon who found and removed an osteoma of the maxilla, a cyst of the mandible, or both, during the entire year 1957.

" 'AND WHEREAS, in truth and in fact, Dr. Hunter L. Harang had failed to submit any removed tissue for pathological examination in 174 cases wherein he allegedly found and removed a cyst of the mandible or osteoma of the maxilla during 1957 despite hospital rules requiring the submission of removed tissue for examination.' "

Appellant further stated that such charges were completely false, but said appellees as well as their agents and employees contacted various organizations and published such false charges in attempting to have appellant's license revoked, so he could not put his patients in the affiliated hospitals of Harris County, Texas; that in April or May of 1958 the representatives of appellees insurance companies met with certain oral surgeons, members of the Harris County Oral Surgeons Association and the Houston District Dental Society for the purpose of devising a plan whereby appellant would be stopped from hospitalizing his patients in said hospitals, and said representatives of the insurance companies and the dental surgeons, among whom were the appellee dentists, devised a plan whereby the doctors would help the insurance companies to accomplish their purpose, and to see that appellant's hospital privileges were revoked and to have appellant's membership in the Houston District Dental Society revoked; that the appellee dentists met with the appellee insurance companies and their representatives on two or three occasions in the Jesse Jones Library Building in the Texas Medical Center in April and May, 1958, and formulated such plan and conspiracy; that the investigation that the appellee insurance companies had prepared against appellant was turned over to the appellee oral surgeons so it could be used by them in carrying out their purpose, and said appellee dentists and oral surgeons began their systematic attack upon appellant which culminated in his membership being revoked in Houston District Dental Society on June 16, 1958; that the written charges which were drawn up by the insurance companies as well as the oral charges, were published at the meetings conducted by the doctors and the insurance representatives during April, May and June, 1958, and that the appellee dentists stated that the false charges which had been made and prepared by the Aetna appellees were all a part of the plan and conspiracy to cause appellant to lose his hospital privileges.

Appellant also stated that he was at the hearing on June 5, 1958 of the censure and grievance committee of the Houston District Dental Society, and that he never at any time admitted that he did anything wrong other than the signing of some hospital reports which he signed without reading, and that any admission in the transcript of the proceedings at such meeting that he made relative to doing anything wrong was only referring to the signing of such hospital records. He then proceeded to exonerate himself from any wrongdoing whatever.

■ The law is well settled that each conspirator is responsible for the acts of his co-conspirators done in pursuance of the conspiracy and during its existence. Hence when a conspiracy has been proved, the acts and declarations of each conspirator during the pendency of the conspiracy and in furtherance of the common design are receivable against his co-conspirators as admissions. McCormick & Ray, Texas Law of Evidence, Vol. 2, p. 64, Sec. 1171, and authorities cited. If appellant sufficiently proved up a conspiracy between the Aetna appellees and the dentist appellees, any declarations later made by either in furtherance of the conspiracy would constitute admissions against all. As to what constitutes a civil conspiracy and proof thereof, see International Bankers Life Ins. Co. v. Holloway, Tex.Sup.1963, 368 S.W.2d 567.

■ It is our view that the insurance companies had the right to investigate appellant's practice and the charges he made and the bills which they were called upon to pay by reason of benefit assignments made by appellant's patients. If such investigation disclosed that appellant was making improper charges and thereby collecting from the insurance companies on benefits assignments from patients more than he was entitled to receive, the Aetna appellees had recourse to the courts to recover any overcharges made by appellant which they had paid. Such action would protect them, their stockholders and the

beneficiaries in their policies. They did not however, have the right to turn over to the appellee dentists the report of the investigation which they had made nor to turn over to them the written charges made against appellant for the purpose of having his membership in the Houston District Dental Society revoked with the resultant deprivation of his right to place his patients in the affiliated hospitals in Harris County. They, therefore, in combination with the dentist appellees resorted to unlawful means to accomplish their purpose of keeping appellant's patients out of hospitals in Harris County, and as a consequence caused damage to appellant. At least, a fact issue was raised with respect thereto.

We recognize that all of the charges made by appellant have been strenuously denied, but we are here confronted with rules governing the granting of a summary judgment. It has been held that the record of a summary judgment proceeding consists of the pleadings whose office it is to outline the claims and defenses of the respective parties, the depositions and admissions on file and the affidavits furnished either in support of or opposing the motion. Gaines v. Hamman, 1962, 163 Tex. 618, 358 S.W.2d 557. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact must be resolved against him, and the pleadings, depositions and affidavits must be reviewed in the light most favorable to the party opposing the motion for summary judgment. Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., Tex.Sup.1965, 391 S.W.2d 41. See also Gulbenkian v. Penn, 1952, 151 Tex. 412, 252 S.W.2d 929; Mecom v. Thompson, Tex.Civ.App., 239 S.W.2d 847, writ ref.

In resolving all doubts as to the existence of a genuine issue of material fact most favorably to appellant, we are of the opinion that the present record does not disclose a case for summary judgment in favor of the Aetna appellees.

Judgment of the trial court is affirmed as to the dentist appellees, and reversed and remanded as to the Aetna appellees.

Affirmed in part and in part reversed and remanded.

COLEMAN, J., not participating.