Frank SLAVIN, Plaintiff-Appellant,

v.

Tim CURRY etc., et al., Defendants-Appellees.

No. 77–2922
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

June 13, 1978.

---

\* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Frank Slavin, pro se.

Marvin Collins, Asst. Dist. Atty., Fort Worth, Tex., for Curry, Walls, Robinson, Shannon, Lindsey, Starr and Chaney.

Doug Crouch, Dist. Atty., Fort Worth, Tex., for Pringle.

Roswald E. Shrull, Fort Worth, Tex., for Kohl.

Gordon H. Rowe, Jr., Dallas, Tex., for Lon Evans.

Davis Grant, Gen. Counsel, Wayne Paris, Asst. Gen. Counsel, Austin, Tex., for defendants-appellees.

Before MORGAN, CLARK and TJOFLAT, Circuit Judges.

CHARLES CLARK, Circuit Judge:

In his pro se complaint Slavin named twenty persons who he alleged had conspired and acted to deprive him of rights guaranteed by the United States Constitution. Slavin based his cause of action on 42

U.S.C. §§ 1983, 1985, and 1986. The defendants responded with motions to dismiss for various reasons, among them, failure to state a claim, immunity, and the statute of limitations. The district court granted dismissals or summary judgment to all of the defendants without holding a hearing. Slavin has appealed from these actions. We vacate portions of the final order of the district court and remand for a hearing.

A judge cannot allow the personal view that the allegations of a pro se complaint are implausible to temper his duty to appraise such pleadings liberally. As we said in *Cruz v. Skelton*:

> We note initially that a § 1983 complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. The allegations of the complaint, especially a pro se complaint, must be read in a liberal fashion. *Haines v. Kerner,* 1972, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652; *Cruz v. Beto,* 1972, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263, and they must be accepted as true in testing their sufficiency, *Haines v. Kerner,* supra, *Cruz v. Beto,* supra.

543 F.2d 86, 88 (5th Cir. 1976), *cert. denied,* 433 U.S. 911, 97 S.Ct. 2980, 53 L.Ed.2d 1096 (1977). *See also Taylor v. Gibson,* 529 F.2d 709, 714 (5th Cir. 1976); *Goff v. Jones,* 500 F.2d 395, 397 (5th Cir. 1974); *Reed v. Jones,* 483 F.2d 77, 78 (5th Cir. 1973).

Read in the light of those admonitions, Slavin's complaint describes a conspiracy which began in March 1974 when he applied for a beer and wine permit for his grocery store. The chief of police told him that under no circumstances would he be granted the permit even though a similar store, in the same neighborhood, had recently received a permit. When Slavin indicated that he would sue to obtain the permit, the police chief and others initiated a plan to frame Slavin. A family with young children was moved into the neighborhood near Slavin's store and an attempt was made to have Slavin employ the mother. One of the young children began coming into the store regularly. In May 1974, Slavin was arrested on a charge of indecency with this child. The police officers and representatives of the county district attorney who arrested Slavin beat him and verbally abused him. He was held in jail until July 2, when he was released and, after another beating, told to leave town. By then Slavin had retained as his attorney a man who visited Slavin in jail after learning from others that he might need assistance. Upon his release, Slavin discovered that the attorney had used the authority given him to take possession of Slavin's property for his own use, rather than protecting Slavin's interests. Even so, Slavin followed the admonition of his accusers and left town. He had no other contact with the conspirators until April 1975 when he contacted his retained counsel to discuss filing a civil suit against the conspirators, including the attorney. As a result of that inquiry, Slavin was again arrested and a date was set for his trial. After Slavin's retained attorney withdrew, the court appointed an attorney and an investigator to assist him. Instead of assisting him, however, they joined with the conspirators to thwart Slavin's attempts to prepare his defense. Slavin was found guilty by a jury. When he filed his appeal, the trial judge ordered the court reporters to change the transcript to reflect a stronger case for the prosecution and to delete testimony favorable to Slavin. Despite this tampering, the Texas Court of Criminal Appeals vacated the conviction because of a faulty indictment. Slavin filed this suit in federal court on December 31, 1976, before the conviction was vacated. Slavin had been reindicted, but not retried when the federal district court issued its order dismissing the complaint. The record before this court does not reveal the outcome of any subsequent state proceedings against Slavin.

Read with the required liberality, Slavin's complaint relates, with sufficient specificity, facts that could entitle him to relief. *Cf. Johnson v. Wells,* 566 F.2d 1016, 1017 (5th Cir. 1978). Even though his com-

plaint contains adequate factual content, Slavin is entitled to a favorable ruling on the pleadings only if his complaint suffices under other legal standards. Here the trial court ruled that part of Slavin's complaint was barred by the statute of limitations. The court held that a two-year limitation period barred any action against the defendants who arrested Slavin in May 1974. That conclusion depends upon reading the complaint as showing several, separate conspiracies. When the complaint is read with the required liberality, however, it asserts a single, continuing conspiracy. That is, it reveals a conspiracy that began with the intention of denying Slavin the equal protection of the laws and continued by obstructing justice and denying due process in an attempt to conceal the complicity in the first action. The complaint recounts a number of incidents. While they state separate causes of action against individual defendants, they also charge participation in a single conspiracy. The district court erred in treating the incidents as alleging only separate causes of action.

 Since there is no congressionally enacted statute of limitation for actions under the Civil Rights Act, federal courts must apply the appropriate state limitation period. Under Texas law the statute of limitations for a civil conspiracy begins to run after "the last overt act alleged to have caused damage." *Harang v. Aetna Life Insurance Company,* 400 S.W.2d 810, 814 (Tex.Civ.App.1966). In the present case, the last overt act occurred on December 30, 1975, when the court reporters certified the transcript of Slavin's trial. We need not decide which limitation period would be appropriate for Slavin's complaint, for he filed it within a year of the last act and the shortest period of limitation for personal actions under Texas law is one year. *See* Tex.Rev.Civ.Stat.Ann. arts. 5524–5536a (Vernon 1958 & Supp.1978). Thus, regardless of the characterization of Slavin's single conspiracy claim, none of its individual components is barred by the statute of limitations.

The conclusion that no part of Slavin's action is barred by a limitation period depends upon his being able to maintain the action as one for conspiracy either under section 1983 or section 1985. Absent a connecting conspiracy, the statute of limitations would run from the date of each violation and, as the district court held, some portions of the action would be barred.

 An action for conspiracy may be maintained under section 1983. As this court said in *Nesmith v. Alford,* 318 F.2d 110, 126 (5th Cir. 1963), *cert. denied,* 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964):

> Of course, for a claim under § 1983, a conspiracy as such is not an indispensable element as it is under § 1985. But it may be charged as the legal mechanism through which to impose liability on each and all of the Defendants without regard to the person doing the particular act. Conspiracy is asserted in that situation on more or less traditional principles of agency, partnership, joint venture, and the like.

To maintain a conspiracy action under § 1983 here, however, it is necessary that there have been an actual denial of due process or of equal protection by someone acting under color of state law. *Hanna v. Home Insurance Company,* 281 F.2d 298, 303 (5th Cir. 1960), *cert. denied,* 365 U.S. 838, 81 S.Ct. 751, 5 L.Ed.2d 747 (1961). Here, taking the allegations as true, the conspirators framed Slavin, thereby denying him due process, and prevented him from obtaining a beer and wine license, thereby denying him equal protection of the laws. In particular, the court reporters acted under color of state law in preparing the trial transcript. Slavin's complaint is therefore legally sufficient to state a cause of action for conspiracy under section 1983.

 We reach a different conclusion regarding his claims under section 1985. In his complaint, Slavin mentions only section 1985(3). Even so, the complaint states facts sufficient to support a claim of obstruction of justice. We therefore treat the complaint as though it had also pled a cause of

action under section 1985(2). *Cf. Baldwin v. Morgan,* 251 F.2d 780, 791 (5th Cir. 1958). The Supreme Court has said that the language of section 1985(3), "requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (emphasis in original). The language of section 1985(2) is similar to that of section 1985(3). The relevant portion of section 1985(2) establishes a cause of action against two or more persons who:

conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws, . . . .

Although this circuit has not applied the conclusion of *Griffin* to actions brought under section 1985(2), those circuits which have considered the question have all held that racial or class-based discrimination is necessary under section 1985(2). *Dacey v. Dorsey,* 568 F.2d 275, 277 (2d Cir. 1978); *Phillips v. International Association of Bridge, Structural and Ornamental Iron Workers, Local 118,* 556 F.2d 939, 940–41 (9th Cir. 1977); *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1341 (7th Cir.) (assuming conclusion *arguendo* ), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977); *Smith v. Yellow Freight System, Inc.,* 536 F.2d 1320, 1322–23 (10th Cir. 1976); *Jones v. United States,* 536 F.2d 269, 271 (8th Cir. 1976), *cert. denied,* 429 U.S. 1039, 97 S.Ct. 735, 50 L.Ed.2d 750 (1977); *Brawer v. Horowitz,* 535 F.2d 830, 837–41 (3d Cir. 1976); *Hahn v. Sargent,* 523 F.2d 461, 469 (1st Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). We are persuaded that those cases reach the correct result. Because Slavin's complaint contains not even an intimation of racial or class-based discrimination, his claims under sections 1985(2) and 1985(3) must be dismissed. Since he has no claim under section 1985,

his claim under section 1986 must also be dismissed. *Hamilton v. Chaffin,* 506 F.2d 904, 913–14 (5th Cir. 1975).

In sum, as we review the district court's dismissals we consider only those claims that may be brought under section 1983; claims under sections 1985 and 1986 were due to be dismissed. For clarity we shall discuss each defendant separately, with primary concern for the district court's most frequently given reason for dismissal—that the defendant was immune from suit under section 1983.

 Our review is guided by the principle that dismissal without a hearing is seldom appropriate when the defense of immunity is pled. One reason for that principle is that there are two types of immunity. As the Supreme Court has explained:

The procedural difference between the absolute and the qualified immunities is important. An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity. The fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence at trial.

*Imbler v. Pachtman,* 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 989 n. 13, 47 L.Ed.2d 128 (1976). The existence and the extent of any immunity defense depends upon the position occupied by the defendant as well as the motivation of the defendant. Unless the district court is thoroughly familiar with the position, it cannot determine whether the occupant of the position is entitled to absolute immunity without first conducting a hearing. Likewise, for those having only a qualified immunity, a hearing is usually necessary to determine whether the defendant's motivation entitles him to a defense of good faith. *See Sims v. Adams,* 537 F.2d 829, 832 (5th Cir. 1976); *Bryan v. Jones,* 530 F.2d 1210, 1214 (5th Cir.) (en banc), *cert. denied,* 429 U.S. 865, 97 S.Ct. 174, 50 L.Ed.2d 145 (1976); *Jones v. Diamond,* 519 F.2d 1090, 1101 (5th Cir. 1975).

Before discussion of each defendant, we may summarize our reasoning as follows. The contention that a conspiracy existed which deprived the petitioner of rights guaranteed by federal law makes each member of the conspiracy potentially liable for the effects of that deprivation. Liability arises from membership in the conspiracy and from traditional notions that a conspirator is vicariously liable for the acts of his co-conspirators. Liability does not arise solely because of the individual's own conduct. Some personal conduct may serve as evidence of membership in the conspiracy, but the individual's actions do not always serve as the exclusive basis for liability. It is therefore not sufficient justification to say that a claim against a particular defendant must be dismissed because that defendant would be immune from liability for his own conduct. Additional inquiry is required to determine whether the immunity extends also to participation in a conspiracy. For example, private individuals may not be held liable under section 1983 for their conduct. *See, e. g., Greco v. Orange Memorial Hospital Corporation*, 513 F.2d 873, 877–78 (5th Cir.), *cert. denied*, 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975); *Hill v. McClellan*, 490 F.2d 859, 860 (5th Cir. 1974). They may nevertheless be held liable if they conspired with a person who acted under color of state law. *Taylor v. Gibson, supra*, 529 F.2d at 715.

In Slavin's complaint he has identified several incidents that amounted to a deprivation of his rights by persons acting under color of state law. Since the statute of limitations did not begin to run until December 30, 1975, none of the acts of this single conspiracy are time-barred. Thus, overt acts may range in time from the beating by the arresting officers in May 1974, to the alteration of the transcript in December 1975. If Slavin can prove that any of those acts were committed as the result of a conspiracy to deprive him of his rights, then any participant in the conspiracy might be liable for the injury done.

Judge Charles Lindsey presided at Slavin's trial. Recognizing that Judge Lindsey would be immune from an action for damages, Slavin petitioned the district court for a declaratory judgment that the judge's actions were unconstitutional and a violation of section 1983. Slavin does not complain of the judge's judicial acts in the conduct of the trial. Rather, he identifies two actions which show the judge's participation in the conspiracy. First, in June 1974, Judge Lindsey cancelled Slavin's original bond. That cancellation allowed the conspirators to move the complaining witnesses out of town and make them unavailable for Slavin's investigations. The other act came after the trial when the judge directed the court reporters to alter the trial transcript.

The district court gave three explanations for dismissing the complaint against Judge Lindsey without stating whether any alone would have been sufficient. First, the court explained that it would refrain from interfering with an existing state criminal proceeding, citing *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Second, the court stated that declaratory relief was inappropriate because there was no longer an active controversy between the parties. Finally, in a summary of its conclusions, the court stated that the actions would be dismissed because of judicial immunity.

The court's reliance upon *Younger* was misplaced. For in this case Slavin alleged the "bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief." *Younger, supra*, 401 U.S. at 56, 91 S.Ct. at 755. *Cf. Kugler v. Helfant*, 421 U.S. 117, 125, 95 S.Ct. 1524, 1531, 44 L.Ed.2d 15 (1975). Under those circumstances abstention under *Younger* was inappropriate.

Judicial immunity extends only to those functions "normally performed by a judge." *Stump v. Sparkman*, —— U.S. ——, ——, 98 S.Ct. 1099, 1107, 55 L.Ed.2d 331 (1978). The setting of bond is clearly a judicial function. So too is the supervision of court reporters. Under Texas law trial judges select their court reporters, who thereafter serve during the pleasure of the

judge. Tex.Rev.Civ.Stat.Ann. art. 2321 (Vernon Supp. 1978). Judge Lindsey is therefore absolutely immune from a suit for damages for his participation in the alteration of the transcript as well as for cancelling the bond. Since there was no allegation that he had participated in the conspiracy otherwise than in his judicial role, Judge Lindsey cannot be liable for damages for injury to Slavin.

 Even though Judge Lindsey is immune from an action for damages, he would not be immune from an action for equitable relief. *See Wood v. Strickland*, 420 U.S. 308, 315 n. 6, 95 S.Ct. 992, 997 n. 6, 43 L.Ed.2d 214 (1975); *United States v. McLeod*, 385 F.2d 734, 738 n. 3 (5th Cir. 1967). *See also Shipp v. Todd*, 568 F.2d 133, 134 (9th Cir. 1978); *Timmerman v. Brown*, 528 F.2d 811, 812, 813–14 (4th Cir. 1975); *Hansen v. Ahlgrimm*, 520 F.2d 768, 769 (7th Cir. 1975); *Jacobson v. Schaefer*, 441 F.2d 127, 130 (7th Cir. 1971); *Nicholson v. Board of Commissioners of Alabama State Bar Association*, 338 F.Supp. 48, 52 n. 4 (M.D. Ala.1972) (three-judge court). Thus, the district court erred insofar as it held that judicial immunity protected Judge Lindsey from a suit for declaratory relief.

 Elimination of those two reasons leaves for consideration the holding that declaratory relief was inappropriate because there was no longer an active controversy between the parties. It is true that courts will grant declaratory relief only if there is "a substantial controversy of sufficient immediacy and reality between parties having adverse legal interests." *Wolfer v. Thaler*, 525 F.2d 977, 979 (5th Cir. 1976). *See* 28 U.S.C. § 2201. In this case, whether there is such a substantial controversy will depend upon Slavin's current condition. If he has not been retried on the same charges, these defendants may continue to infringe his constitutionally guaranteed rights. If that possibility were proved, the district court is not foreclosed from enjoining the judge and others from continuing their conduct. It may be, however, that Slavin has been retried and found innocent. If that be true, the district court

will probably conclude that equitable relief would be inappropriate. If Slavin is presently in prison after having been convicted, whatever controversy may exist would be between Slavin and the state official responsible for continuing his imprisonment. Under those circumstances, there would be no controversy between the judge and Slavin. Because we do not know which of those conditions is true, we remand the claim against Judge Lindsey to the district court for further proceedings.

Four members of the county district attorney's office were named as defendants: Tim Curry, the district attorney; Joe Shannon, Jr., chief of the criminal division of the district attorney's office; and Clint Starr and Steven Chaney, prosecutors at Slavin's trial. Curry and Shannon were sued for damages; Slavin sought only a declaratory judgment against Starr and Chaney. Curry's conduct was alleged to consist of presenting fraudulent and illegal evidence to the grand jury which returned the indictment against Slavin. Curry also requested that Slavin's initial bond be cancelled. In addition, Curry assisted in the alteration of the transcript. Shannon's only participation as a member of the district attorney's office consisted of knowing that the trial transcript had been altered. There were no specific allegations against Starr and Chaney, other than their alleged participation in the alteration of the trial transcript.

 Prosecutorial officials are immune from damage actions brought for conduct performed in the role of a prosecutor. *Imbler v. Pachtman*, 424 U.S. 904, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Thus, Curry cannot be liable for damages for his presentation of evidence to the grand jury or for his request that Slavin's bond be cancelled. The district court properly dismissed that portion of the complaint. Prosecutors are not, however, immune from actions for equitable relief. *See Timmerman v. Brown*, 528 F.2d 811, 812 (4th Cir. 1975); *Boyd v. Adams*, 513 F.2d 83, 86 (7th Cir. 1975). In addition, the prosecutorial function does not extend to supervision of the trial transcript. So, these prosecutors may be liable for dam-

ages as well as for equitable relief if they participated in altering the transcript. Further proceedings are required to determine whether there was an alteration of the transcript and, if so, whether these defendants conspired in it. The district court should also determine whether there is an active controversy as to these defendants which would warrant further investigation to determine whether equitable relief would be appropriate.

The next defendant is Dalton Gandy, the public defender appointed by the court to assist Slavin. Slavin contends that Gandy violated his rights by failing to notify the court that the original indictments against Slavin were faulty. In addition, Gandy instructed the court-appointed investigator not to search for exculpatory information but instead to find whatever information would incriminate Slavin. Through the use of this incriminating evidence, Gandy attempted to coerce Slavin into pleading guilty. The district court dismissed these claims against Gandy, stating that as a public defender Gandy was immune from suit.

■ Insofar as Slavin alleged that Gandy was guilty of misconduct in his role as public defender that dismissal was appropriate because no state action is involved. *United States ex rel. Simmons v. Zibilich*, 542 F.2d 259, 261 (5th Cir. 1976); *Sullens v. Carroll*, 446 F.2d 1392 (5th Cir. 1971). It was also appropriate to dismiss the claims based upon a cause of action under section 1986 for failure to inform the court of the faulty indictments. It was not correct, however, to dismiss the claims against Gandy that arose from his participation in the conspiracy by assisting in the alteration of the transcript. He would not be immune from liability for his vicarious responsibility for the actions of other conspirators. The district court should have determined whether Gandy had participated in any conspiracy.

■ Slavin also complained of the activities of the court-appointed investigator, L. M. Kohl. As described previously, those activities consisted of seeking derogatory information rather than exculpatory information concerning Slavin. The district court held that as a court-appointed official, Kohl was entitled to judicial immunity. We agree that Kohl was immune from suit but by analogy to court-appointed counsel and not merely because of his court appointment. Kohl was appointed to serve Slavin, not the state. There was no state action involved in Kohl's conduct. *Cf. Zibilich, supra.* Like Gandy, though, Kohl can be held liable if it can be proved that he participated in a conspiracy.

■ Brantley Pringle was for a while Slavin's retained attorney. Private counsel does not act under color of law. In the absence of an actionable conspiracy, Pringle cannot be held liable under the Civil Rights Acts. *Hill v. McClellan*, 490 F.2d 859, 860 (5th Cir. 1974). But, as with the other defendants, Pringle may be liable for his participation in a conspiracy. The district court erred in dismissing the complaint against Pringle without determining whether he had been a member of the conspiracy.

■ The final defendants who were associated with the court are Debra Walls and Bette Robinson, the official court reporters at Slavin's trial. Slavin contends that they altered the transcript. The district court concluded that Slavin's claims were barred because the reporters were acting as quasi-judicial officials who were clothed with judicial immunity. That conclusion was incorrect. In *Rheuark v. Shaw*, 547 F.2d 1257, 1259 (5th Cir. 1977), this court held that an action could be maintained under section 1983 against a state court clerk and stenographer for failing to forward a transcript to the state appellate court. *See also Qualls v. Shaw*, 535 F.2d 318 (5th Cir. 1976); *McLallen v. Henderson*, 492 F.2d 1298, 1299 (8th Cir. 1974). Whether the court reporters are entitled to raise a defense of qualified immunity depends upon whether they "can show that [they were] acting pursuant to [their] lawful authority and following in good faith the instructions or rules of the Court and [were] not in derogation of those

**1266**

instructions or rules." *McLallen, supra,* 492 F.2d at 1300.

In addition to the court-related personnel, the trial court held that two other participants in Slavin's trial were immune from suit. One, Dr. Stephen Maddox, testified on behalf of the prosecution. The only cause of action asserted against Dr. Maddox was under section 1986 for failing to notify the court that his testimony had been altered. Slavin did not allege that Dr. Maddox had conspired with any of the other defendants. Since Slavin cannot maintain an action under section 1986, the claim against Dr. Maddox was correctly dismissed.

The other nonjudicial person who the district court held to be immune was Elizabeth Taylor, a family counselor for the Department of Welfare. Mrs. Taylor allegedly took part in the conspiracy by arranging for the rental of the house into which the family moved. She also participated by moving the family away after Slavin had been arrested. The district court held that as a state administrative official, Mrs. Taylor was immune from suit in the performance of her duties. That conclusion is too broad. It may be that Mrs. Taylor is entitled to some immunity. She is not, however, absolutely immune. The extent to which she may be immune and likewise the extent to which she is entitled to raise a good faith defense depends upon the nature of her position. The greater the discretion and responsibility involved with her job, the more important it is that she be protected by qualified immunity. *Cf. Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bryan v. Jones, supra,* 530 F.2d at 1214–15. Because the trial court did not determine whether Mrs. Taylor's conduct was within the ambit of her discretionary authority, we remand for such a determination, and, if necessary, for a determination of her liability for participation in the conspiracy.

After Slavin's initial trial he filed a grievance against his retained attorney, Brantley Pringle. The grievance was referred to the county bar association's griev-ance committee which considered the matter and decided that there had been no violation of the code of professional responsibility and dismissed the complaint. Slavin contends that by dismissing the complaint the bar grievance committee participated in the cover-up. The members of the grievance committee were Joe Shannon, Jr., the assistant district attorney, Jack Wessler, and Dixon Holman. The district court dismissed the claims against those defendants because Slavin had failed to show facts which would support a denial of equal protection or to show a conspiracy against Slavin. In addition, the district court held that as an arm of the State Supreme Court the members of the grievance committee were protected against suit by judicial immunity. Since we have already determined that Slavin's allegations were sufficient to state a cause of action, we need only consider whether the grievance committee is entitled to absolute, or judicial, immunity. We find that they are. Under Texas law, "The Grievance Committee is an administrative agency of the judicial department and is the arm of the Supreme Court in the discharge of its professional policing duties." *State v. Sewell,* 487 S.W.2d 716, 719 (Tex. 1972). *See also* Tex.Rev.Civ.Stat.Ann. art. 320a–1 (Vernon 1973 & Supp.1978). As agents of the court, the members of the Grievance Committee are entitled to the same immunity that the judges would have if they exercised this function directly. As with Judge Lindsey, however, that immunity does not extend to immunity from equitable relief. This portion of the case must also be remanded for additional proceedings to determine whether these defendants participated in a conspiracy and, if so, whether equitable relief is appropriate.

Another group of defendants is made up of the police officers and others who first arrested and beat Slavin. These people are Johnny Jones, the local chief of police; Arlene Evans, a member of the local police department; and W. E. Keating and Tim Evans, investigators for the county district attorney. The trial court held that the statute of limitations barred recovery

from these defendants. As we have explained, that conclusion was erroneous. Since the arrest and beating were asserted as but the first acts of a conspiracy, the statute of limitations did not begin to run then. These defendants, who are not entitled to absolute immunity, may be liable for damages for their participation in the conspiracy. *See, e. g., Reeves v. City of Jackson, Mississippi*, 532 F.2d 491, 494–95 (5th Cir. 1976).

The trial court gave as an additional reason for granting summary judgment for defendant Tim Evans that Evans filed an affidavit in which he stated that he had never participated in any capacity in events involving Slavin. Slavin filed a counter-affidavit reaffirming the allegations in the complaint and stating that he had reviewed the record and found that Tim Evans was listed as an arresting officer. The two affidavits created an issue of fact which it was inappropriate to resolve without further proceedings. As the Seventh Circuit has said, "Cases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment, as are those in which the issues turn on the credibility of the affiants." *Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914, 918 (7th Cir. 1974). *Cf. Gossett v. Du-Ra-Kel Corporation*, 569 F.2d 869 (5th Cir. 1978).

The final law enforcement official involved as a defendant is Lon Evans, sheriff of the county. The only act attributed to Sheriff Evans was his participation in Slavin's release from jail in July 1974. According to Slavin, the purpose of that release was to provide an opportunity to kill him and allege that he had been shot while trying to escape. The trial court dismissed that claim as insufficient to state a cause of action. Such a conclusion would be correct if the release were viewed as an isolated incident. But Slavin's complaint contends that the incident was but part of the overall conspiracy. It is in that light that the district court should consider the incident on remand.

The final defendant is Linda Garrison. She is alleged to have been the first social worker to contact the family which was used to frame Slavin. The district court relied upon her affidavit to conclude that she had never been a social worker employed by the county. Slavin responded with a counter-affidavit in which he swore on personal knowledge that Garrison had stated that she was a church and social worker for the county. As we said with regard to Tim Evans, the court's conclusion was improper. It was also improper to dismiss the complaint as insufficient to state a cause of action. The district court should consider whether there is proof of Garrison's participation in the conspiracy.

In sum, except as stated, the dismissals are vacated and the cause is remanded to the district court for further proceedings. Slavin has alleged facts which, if proven, would entitle him to some form of relief. The exact form of portions of any relief available may also depend upon the present situation of both Slavin and various of the remaining defendants, since Slavin could conceivably be entitled to equitable relief even against those defendants who are immune from actions for damages.

In this action where the allegations are so far-fetched, we feel compelled to reiterate that our ruling implies no intimation of merit as to any charge leveled at any defendant. We hold only that the action was not appropriate for dismissal on the grounds asserted and in the manner followed.

IN PART AFFIRMED

AND IN PART VACATED AND REMANDED.