Harold T. TARTER et al.,
Plaintiffs-Appellants,

v.

James HURY et al.,
Defendants-Appellees.

No. 80–1057.

United States Court of Appeals,
Fifth Circuit.
Unit A

June 1, 1981.

Jama L. Casey, Sewell & Riggs, Houston, Tex., for plaintiffs-appellants.

Stephen G. Nagle, Douglas Becker, Nancy Simonson, Asst. Attys. Gen., Austin, Tex., for defendants-appellees.

Before BROWN, WISDOM and RANDALL, Circuit Judges.

WISDOM, Circuit Judge:

Harold T. Tarter brought this action under 42 U.S.C. § 1983 asserting broad challenges to the administration of the criminal justice system in Galveston County, Texas. The district court dismissed Tarter's claims even before his pleadings could be served on

1. Tarter's original complaint, submitted on a form provided by the Clerk of Court for the Southern District of Texas, was also signed by five other co-plaintiffs. Tarter's amended complaint, filed on the same day as the original complaint, was signed by one other co-plaintiff.

defendants. Although we disagree in part with the district court's reasons, we must affirm the dismissal.

I.

Harold T. Tarter filed this suit pro se in 1979.[1] Construed liberally, as pro se pleadings must be, his complaint asserts a class action on behalf of all those persons who have been, are presently, or who in the future will be, prosecuted in the state criminal courts of Galveston County, Texas. The defendants are two judges, the district attorney and one of his assistants, and the clerk of court and his deputy. The complaint charges that the defendants have violated and will continue to violate the constitutional rights of indigent criminal defendants in Galveston County in the following ways: (1) by providing ineffective court-appointed counsel; (2) by denying speedy trial; (3) by imposing excessive bail; (4) by creating and tolerating unfair grand jury proceedings; (5) by coercing guilty pleas; and (6) by refusing to docket and hear pro se motions. The complaint seeks declaratory and injunctive relief, damages, and attorneys' fees.

Before Tarter's complaint could be served on the defendants, the district court entered an order dismissing all his claims.[2] Two unrelated reasons were offered for the dismissal. The court held first that the judges, prosecutors, and court clerks, were absolutely immune from suit because all the actions complained of were within their jurisdiction or authority. Second, relying on precedent established by the Supreme Court and by this Court, the district court held that since the complaint directly raised issues concerning the validity of the plaintiffs' confinement, the complaint was essentially a habeas corpus petition. The plaintiffs therefore had to exhaust all available state remedies before bringing suit in federal court.

Only Tarter, however, has perfected an appeal from the dismissal.

2. The district court apparently ordered dismissal after reviewing Tarter's complaint to determine whether to grant his request to proceed in forma pauperis.

## II.

█ The failure to exhaust state remedies provides a proper basis for dismissing some, but not all, of Tarter's claims. *Preiser v. Rodriguez*, 1973, 411 U.S. 475, 500, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439, held that a state prisoner who seeks release from prison by challenging the constitutionality of his imprisonment or the duration of his confinement cannot do so by means of a § 1983 action. Rather he must proceed by a writ of habeas corpus, for which exhaustion of state remedies is an absolute prerequisite. Relying on *Preiser*, this Court has held that even where a state prisoner seeks only damages and disclaims any interest in obtaining release from prison, he must still exhaust state remedies before bringing a § 1983 action if the action would raise issues that go directly to the constitutionality of his conviction or confinement. *Meadows v. Evans*, 5 Cir. 1976, 529 F.2d 385, 386, *aff'd en banc*, 1977, 550 F.2d 345, *cert. denied*, 434 U.S. 969, 98 S.Ct. 517, 54 L.Ed.2d 457; *Fulford v. Klein*, 5 Cir. 1976, 529 F.2d 377, 380–81, *aff'd en banc*, 1977, 550 F.2d 342. These cases require us to affirm the dismissal of Tarter's claims for both equitable and monetary relief based on the alleged ineffectiveness of court-appointed counsel, the denial of speedy trials, the unfairness of grand jury proceedings, and the coercion of guilty pleas. Successful prosecution of any claims for relief based on those four grounds would require findings that Tarter and other members of the class he wishes to represent had been unconstitutionally convicted, findings that a federal court cannot

make until they have exhausted their state remedies.

█ The district court's conclusion that absolute immunity protected the defendants against Tarter's claims is only partially correct. The Supreme Court has indeed held that judges and prosecutors enjoy absolute immunity from claims for monetary relief arising out of actions performed within their official authority. *See Stump v. Sparkman*, 1978, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331, and *Imbler v. Pachtman*, 1976, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128. The allegedly unconstitutional actions of the judges and prosecutors are not outside the authority of their respective public offices, and Tarter does not so contend. The plaintiffs' claims for damages against the judges and the prosecutors were therefore properly dismissed on grounds of absolute immunity.[3]

█ As to claims for declaratory and injunctive relief, however, the Supreme Court has never provided judges and prosecutors with absolute immunity. *See Supreme Court of Virginia v. Consumers Union*, 1980, 446 U.S. 719, 734–36, 100 S.Ct. 1967, 1975–77, 64 L.Ed.2d 641, 655–56. Although *Consumers Union* left open the question whether judges enjoy absolute immunity from claims for equitable relief,[4] the decision reaffirms the principle that prosecutors do not enjoy absolute immunity from such claims. *Id.*, 446 U.S. at 736–38, 100 S.Ct. at 1976–78, at 656–57. Therefore, even if absolute immunity would bar Tarter's claims for equitable relief against the judges, a

**3.** This Court has taken a dim view of dismissing a plaintiff's claims on the ground of either absolute or qualified immunity without conducting a hearing. *Slavin v. Curry*, 5 Cir. 1978, 574 F.2d 1256, 1262. Because the scope of a defendant's absolute immunity depends on the scope of the authority vested in the office he holds, a hearing is generally necessary to develop the facts that bear on what the scope of authority was and on whether the acts complained of fell within that authority. *Id.* at 1262–63. In this case, however, the acts with which the judges and prosecutors are charged are so plainly within the usual powers of their offices that the court could take judicial notice of the facts necessary to its finding of absolute immunity. In *Slavin*, for example, the Court

upheld an absolute immunity ruling in favor of a state judge that had been reached without a hearing in spite of its admonition against that practice. *Id.* at 1263–64.

**4.** Three federal courts of appeals have held that judges are not immune from claims for equitable relief, and three others have indicated agreement with that view. *See Supreme Court of Virginia v. Consumers Union*, 1980, 446 U.S. 719, 735 n.13, 100 S.Ct. 1967, 1976 n.13, 64 L.Ed.2d 641, 655 n.13. In *Slavin v. Curry*, 5 Cir. 1978, 574 F.2d 1256, *modified in part*, 583 F.2d 779, this Court also held that judges do not enjoy such immunity, but later withdrew that holding for mootness.

question we do not now need to decide, it would not bar those claims against the prosecutors.

■ Court clerks enjoy an even narrower ambit of immunity than judges and prosecutors. They have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction, and only qualified immunity from all other actions for damages. *Williams v. Wood,* 5 Cir. 1980, 612 F.2d 982, 984–85. Whether the court clerks here enjoy either absolute or qualified immunity depends on facts not discernible from the record and of which the district court did not, and probably could not, take judicial notice. The claims for damages against the court clerks therefore are not now dismissable on the basis of immunity. Furthermore, since clerks enjoy no immunity whatsoever from claims for equitable relief, those claims are also not dismissable on that ground.

### III.

As demonstrated above, the district court's reasoning supplies a basis for dismissing most of Tarter's claims. The actions that survive the district court's grounds for dismissal are the actions for equitable and monetary relief against the clerks based on the refusal to docket pro se motions, and the actions for equitable relief against the judges based on the imposition of excessive bail and on the refusal to hear pro se motions. These actions are nevertheless dismissable for reasons other than those cited by the district court.

■ Considerations of comity, as described in *O'Shea v. Littleton,* 1974, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674, defeat the claims based on the imposition of excessive bail. *O'Shea* involved a similar attack on the administration of the criminal justice system in Alexander County, Illinois. Among other things, the plaintiffs alleged that the judges were guilty of racial discrimination in the setting of bail, in the

imposition of sentences, and in requiring blacks to pay for their jury trials adjudicating charges of violating local ordinances. The plaintiffs sought declaratory and injunctive relief. The Supreme Court held that dismissal of those claims was appropriate because the granting of such equitable relief would require excessive federal interference in the operation of state criminal courts. The enforcement of any remedial order granting the relief requested would require federal courts to interrupt state proceedings to adjudicate allegations of asserted non-compliance with the order. This sort of anticipatory interference violated the principle, established in *Younger v. Harris,* 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and other related cases, that state criminal process should run its course before federal courts exercise their equitable powers.

■ Because *O'Shea* involved a challenge to the imposition of excessive bail, it is conclusive as to Tarter's claim for equitable relief based on that ground.[5] The *O'Shea* rubric does not apply, however, to the refusal to docket and hear pro se motions. The enforcement of an injunction requiring clerks to file all pro se motions would not require the same sort of interruption of state criminal processes that an injunction against excessive bail would entail. Because the amount of bail prescribed for each criminal defendant depends on the peculiar facts and circumstances of his case, the setting of bail requires ad hoc decisions committed to the discretion of judges. An injunction against excessive bail, no matter how carefully limited, would require a federal court to reevaluate de novo each challenged bail decision. By contrast, an injunction requiring that all pro se motions be docketed and considered by the court (although not necessarily argued) would not require such case-by-case evaluations of discretionary decisions. It would add a simple, nondiscretionary procedural safeguard to the criminal justice system in Galveston

---

5. Except for the refusal to docket and hear pro se motions, the rationale of *O'Shea* applies equally to Tarter's other alleged grounds for equitable relief. Granting and enforcing the equitable relief sought by Tarter to remedy those alleged improprieties would require the same anticipatory interference condemned in *O'Shea. Cf. Wallace v. Kern,* 2 Cir. 1974, 499 F.2d 1345, *cert. denied,* 420 U.S. 947, 95 S.Ct. 1329, 43 L.Ed.2d 425.

County. We have required the addition of similar procedural safeguards before. The changes in Florida's procedures governing the pretrial detention of criminal defendants that resulted from the extensive litigation in *Pugh v. Rainwater*[6] constitutes at least as much of a federal interference in state processes as an injunction requiring the docketing of pro se motions would constitute.

Nevertheless, Tarter's action based on that ground must be dismissed because his complaint fails to state a claim upon which either equitable or monetary relief can be granted. If Tarter and the other members of the purported class had not been represented by court-appointed counsel, the refusal to docket their pro se motions would be a matter of constitutional significance, representing an interference with their right of access to the courts. But that is not the situation here. Nor does the complaint assert specific instances where the clerks' refusal to docket a particular pro se motion has caused hardship to some particular criminal defendant. Rather, the gravamen of the complaint is that the refusal to docket and hear the pro se motions of criminal defendants who are already represented by counsel of itself deprives them of their constitutional right of access to the courts. We do not agree. As long as a criminal defendant is represented by counsel, he will be able to present matters for decision to the court through motions filed by his attorney. Therefore, in the absence of extraordinary circumstances, not alleged here, due process does not require that a criminal defendant be permitted to file every pro se motion he wishes to submit in addition to his attorney's motions.

We hasten to add, however, that extraordinary circumstances may exist in a particular case so that the refusal to docket a pro se motion could deprive a defendant of an opportunity to present an issue to the court. In such a case, an action would lie. Considerations of fairness and prudence therefore suggest that appropriate procedures be established to ensure that pro se motions submitted in such circumstances are presented to the court. But since the present complaint does not allege any particular instances where criminal defendants have been deprived of access to the courts by the failure of a clerk to file a particular pro se motion, it does not state a claim upon which relief can be granted.

For the foregoing reasons, the order of the district court dismissing Tarter's complaint is AFFIRMED. We make the suggestion, however, that when a habeas corpus petition alleges that failure of a clerk to file a particular pro se motion thereby deprived petitioner of access to the courts, the district court should conduct a hearing and determine whether the pro se motion should have been docketed and heard.

6. S.D. Fla. 1973, 355 F.Supp. 1286, *aff'd in part*, 5 Cir. 1973, 483 F.2d 778, *aff'd in part, vacated in part, and remanded sub nom. Gerstein v. Pugh*, 1974, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54, *modified on remand*, S.D. Fla. 1976, 422 F.Supp. 498, and S.D. Fla. 1979, 465 F.Supp. 41; *Pugh v. Rainwater*, S.D. Fla. 1971, 332 F.Supp. 1107, *rev'd in part*, 5 Cir. 1977, 557 F.2d 1189, *vacated as moot in part en banc*, 1978, 572 F.2d 1053.