**John H. ANDES, Appellant,**

**v.**

**Carole Andes CAGLE et al., Appellees.**

**No. 473.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

May 26, 1971.

Rehearing Denied June 16, 1971.

William Dickson, Dickson & Associates, Houston, for appellant.

Decatur J. Holcombe, Underwood & Holcombe, J. E. Tatum, David A. Gibson and J. E. Tatum, Houston, for appellees.

SAM D. JOHNSON, Justice.

John N. Andes, the appellant, instituted this suit for the restitution of shares of certain stock against the appellees, Carole Andes Cagle, Harry W. Cagle and Investors Diversified Services, Inc. The pertinent facts relative to a marriage, divorce and the ownership of property must be set forth in order to understand the contentions of the parties.

The appellant, John N. Andes, and the appellee, Carole Andes Cagle, were married in 1955, and divorced in December of 1961. One son, Rob Roy Andes, was born to this marriage. In February, 1960, John Andes and Carole Andes Cagle paid $8,000 to the appellee, Investors Diversified Services, Inc., for shares of stock acquired under two separate accounts. Both accounts listed John Andes as the shareholder and Carole A. Andes as a joint tenant. The account designated number "014" contained in excess of 660 shares in the Variable Payment Fund, Inc.; the account designated number "023" contained in excess of 238 shares in Investors Stock Fund, Inc. The appellant alleged that these accounts were purchased with funds from his separate property, that the divorce decree made no determination regarding the accounts and that the appellees, without the knowledge or consent of the appellant, effectively deprived him of his stock in the accounts. The trial of this case was to a jury in the District Court of Harris County, Texas, in August, 1970. After the appellant rested his case, the trial court granted the appellees' motion for instructed verdict and entered judgment that the appellant take nothing. The appellant, John Andes, perfects this appeal.

Carole Andes Cagle was married to Floyd Neageli before she married Andes. Two children were born of this marriage. Neageli died in 1952 and left insurance policies for the benefit of Carole Andes Cagle and the two minor children. Carole Andes Cagle testified that at the time of her marriage to Andes she had certain monies. She received insurance payments for the benefit of her two children during the first years of marriage to Andes. Carole Andes Cagle testified that she withdrew the funds from her childrens' savings account and deposited such funds in a joint account. Carole Andes Cagle also worked periodically as a secretary while married to Andes.

John Andes, at the time of his marriage to Carole Andes Cagle, owned approximately $20,000. Sixteen thousand dollars was invested in a house, which was sold subsequent to the marriage. The monies received from the sale of this house were used in a series of transactions involving the buying and selling of at least five properties. It was Andes' position that he and Carole Andes Cagle ultimately purchased the "023" and "014" accounts with funds received from the sale of properties which had been purchased with his separate property.

On November 12, 1960, Carole Andes Cagle signed John Andes' name and her own name on forms authorizing the transfer of the "014" account into three accounts, 034, 044 and 054. She testified that such transfer was for the benefit of her three minor children (two by Naegeli and one by Andes) and in such transfer Carole A. Andes' name was listed as "custodian" for the children. On December 19, 1960, John Andes returned the confirmation of the transfer of the "014" account to Investors Diversified Services, Inc., and made inquiry with reference to the change of names on the account. In August, 1961, Carole Andes Cagle authorized the sale of the shares of stock in the childrens' 034, 044 and 054 accounts and Investors Diversified Services, Inc., sent checks to Carole Andes Cagle for these accounts in the amounts of $2,067.14, $1,241.12 and $2,067.-14. Carole Andes Cagle deposited these checks in her separate bank account and later withdrew these funds from the bank and invested them in the Cagle Construction Company. She testified that she thereafter withdrew the funds from the construction company and used them for living expenses.

The 023 account was transferred by John Andes and Carole A. Andes on May 11, 1961 into an 063 account in the name of Carole A. Andes, as trustee for John Andes. Andes testified that he recognized his signature on the application for transfer of the 023 account into the 063 account. The 063 account was then pledged to a bank as collateral for a home improvement loan. John Andes admitted signing a letter dated June 30, 1961, requesting Investors Stock Fund, Inc. to issue a certificate in Investors Stock Fund in Carole A. Andes' name and requesting it be sent to a local bank on account of a loan made with the bank and secured by the stock. On October 6, 1961, a letter bearing the signatures of John Andes and Carole A. Andes authorized and instructed the bank to sell the shares of Investors Stock Fund that the bank was holding as collateral on the note. The bank was instructed to deposit the full amount from the sale in a checking account and deduct from the account the amount necessary to pay off the principal and interest on the note. Carole Andes Cagle testified that the excess from the sale of this stock was deposited in John Andes' separate bank account. All of the foregoing applications, exchanges, sales and transfers were made before the divorce of John Andes and Carole A. Andes.

In November, 1961, John Andes and Carole Andes Cagle entered into an extensive property settlement which partitioned the house in Houston, furniture, an automobile, property owned in California, an interest owned in a New Jersey trust, a promissory note payable to the parties jointly, retirement funds, pension plans and pension and retirement trust plans. The settlement agreement provided that "the parties hereto are desirous of dividing any and all property, whether real, or personal, accumulated during their marriage." This agreement stated that "any properties now owned by the parties not provided for herein are to be deemed jointly owned."

■ The appellant John Andes apparently contends that the 014 and 023 accounts constituted property which would have been subject to division at the time of the divorce decree. The record is clear, however, that the 014 and 023 accounts were no longer in existence at the time of the property division and divorce. Not being in existence at the divorce they could not be divided between the parties. Both of these accounts had been subject to transfer, exchange and sale prior to such time. The property settlement agreement of the divorce was signed by the appellant with knowledge of the transfer of the 014 and the 023 accounts. Appellant cannot now claim an interest in the two accounts because these were matters which belonged to the subject of the divorce litigation. "The plea of res judicata applies not only to points upon which the court was actually required to pronounce judgment, but to every point which properly belonged to the

subject of litigation, and which the parties, by exercising reasonable diligence, might have brought forward at the time." Ladd v. Ladd, Tex.Civ.App., 402 S.W.2d 940, 942, writ ref., n. r. e.

We hold that the trial court properly withdrew the case from the jury because the evidence conclusively established that the rights of the appellant John Andes and the appellee Carole Andes Cagle, had been finally adjudicated by the divorce decree of December 8, 1961.

■ There are at least two additional reasons why appellant's contentions must be overruled. The appellant's first allegation in his first amended original petition which relates only to Investors Diversified Services, Inc., is that the Variable Payment Fund, Inc. and Investors Stock Fund, Inc., were mutual funds owned by the appellee Investors Diversified Services, Inc. The application for the purchase of the shares of stock in these mutual funds provided that "Investors Diversified Services, Inc., acts as broker for issuer in this transaction." The record is devoid of evidence that these mutual funds were owned by Investors Diversified, Inc., or otherwise had the same identity. Moreover, the appellant has cited no authority which under any circumstances would require that a transfer agent, or broker for the issuer such as Investors Diversified Services, may be required to make restitution of shares of stock in another corporation.

The additional reason for our rejection of appellant's contentions involves the statute of limitations. The record shows that suit was filed on November 12, 1964. Appellant first learned of the alleged unauthorized transfer of the 014 account on December 19, 1960 and executed the transfer of the 023 account on May 11, 1961. The appellant contends that the four-year statute of limitations is applicable to this factual situation and cites Arts. 5527(1) and 5529.

■ Art. 5527(1) provides that all actions for debt where the indebtedness is evidenced by or founded upon any contract in writing shall be commenced and prosecuted within four years after the cause of action shall have accrued. The appellant argues that the shares of stock are written evidence of ownership in the corporation, and the alleged fraudulent transfer of stock out of appellant's name were upon a written instrument. The appellee, Investors Diversified Services, was named in an agreement as the broker for the issuer of the stock. There was no enumeration of any rights or obligation assumed by the appellee Investors Diversified Services. Under Texas law, where an agreement fails to set out specifically the obligations, the violation of which form the basis of a suit, it is considered to be an oral agreement subject to the two-year statute of limitations. Las Mendozas, Inc. v. Powell, 368 F.2d 445 (5th Cir. 1966); Shaw v. Bush, Tex.Civ.App., 61 S.W.2d 526, writ ref.; Cowart v. Russell, 135 Tex. 562, 144 S.W. 2d 249 (Tex.Com.App.); Jordan v. Concho Theatres, Tex.Civ.App., 160 S.W.2d 275, no writ hist.

Art. 5529 provides that an action other than one for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years after the right to bring it shall have accrued. This article is clearly inapplicable because the factual situation presented in this case is controlled by Art. 5526. Art. 5526 provides that "actions for debt where the indebtedness is not evidenced by a contract in writing" and "actions for detaining the personal property of another, and for converting such property to one's own use" must be commenced and prosecuted within two years after the accrual of the cause of action.

■ It is well settled that this two-year statute of limitation applies to misconduct of an agent, even though a written contract may have been involved. Las Mendozas, Inc. v. Powell, supra; Gordon v.

Rhodes and Daniel, 102 Tex. 300, 116 S.W. 40 (Tex.Sup.Ct.); Adams v. San Antonio Life Ins. Co., Tex.Civ.App., 185 S.W. 610, writ ref.; Mutual Life. Ins. Co. of New York v. Garland, 23 Tex.Civ.App. 380, 56 S.W. 551, no writ hist.

We hold that the two-year statute of limitations was applicable to appellant's cause of action as to the appellee Investors Diversified Services, Inc. The trial court properly withdrew the case from the jury because the evidence established that the appellant's cause of action was barred by the two-year statute of limitations.

Because the appellant has, as a matter of law, failed to establish a cause of action against the appellees, the judgment of the trial court is affirmed.