Christine CONAWAY and Husband, Raymond Conaway, Appellants,

v.

George H. CHAMBERS, D.O., Appellee.

No. 6–91–031–CV.

Court of Appeals of Texas, Texarkana.

Dec. 17, 1991.

Rehearing Denied Feb. 4, 1992.

Roger W. Anderson, Conner, Gillen, Yarbrough & Anderson, Tyler, for appellants.

Douglas R. McSwane, Jr., Potter, Guinn, Minton, Roberts & Davis, Tyler, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Christine Conaway and her husband Raymond Conaway appeal from a summary judgment granted in favor of Dr. George H. Chambers on the basis of his statute of limitations defense.

The Conaways raise a single point of error on appeal: that the trial court erred in granting Chambers' motion for summary judgment. The issue is when the statute of limitations began to run.

Dr. Chambers was Christine Conaway's family physician. In the fall of 1983, Conaway complained of a lump in her left breast. Chambers sent her to Titus County Memorial Hospital where a bilateral mammogram was performed. The mammogram was negative, and the radiologist, Dr. Dale Riepe, sent Chambers a report. Chambers never sent Conaway for another mammogram. Conaway, on her own initiative, went for a second mammogram and a sonogram on May 13, 1986. This mammogram was also negative, and again Dr. Riepe sent a copy of his report to Dr. Chambers. Chambers did nothing about this second mammogram except to remark to Conaway on her June 16 office visit, "Well, I see your breast is all right." Conaway saw Chambers at least six more

times over the next two years, seeking treatment for high blood pressure, urinary tract infections, flu, colds, and other minor ailments. Christine Conaway testified that she saw symptoms of cancer in her breast such as a receding nipple, discharge of fluids, and an enlarged lump, but she never mentioned these symptoms to Chambers or sought treatment from him for them.

Conaway presented herself to the University of Texas Health Center at Tyler on March 16, 1988, where breast cancer was diagnosed. A modified radical mastectomy of the left breast was performed a week later. The Conaways filed this action on January 30, 1989, seeking damages caused by the delay in diagnosing the cancer.

In reviewing a summary judgment record, it is the duty of appellate courts to apply the following rules:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

(2) In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movants and any doubts resolved in their favor.

*Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589 (Tex.1975).

■ The specific statute applicable to medical malpractice claims is TEX.REV.CIV. STAT.ANN. art. 4590i, § 10.01 (Vernon Supp. 1991):

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence *of the breach or tort* or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed....

(Emphasis added.) Chambers had the burden of showing as a matter of law that the suit was barred by limitations. *See Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex. 1983). In particular, Chambers had to es-

tablish conclusively a specific date on which the statute began to run. *See Jones v. Cross*, 773 S.W.2d 41, 43 (Tex.App.— Houston [1st Dist.] 1989, writ denied).

Chambers denies any negligence but contends that the last date he could possibly have been negligent was June 16, 1986. This was the date of Christine Conaway's office visit after the second mammogram was done and was the last time that there was any communication between Chambers and Conaway regarding her breast. Conaway made many additional office visits to Chambers for other complaints and problems. Chambers contends the statute of limitations must run from June 16, 1986, and thus this suit, which was filed on January 30, 1989, was commenced more than two years after that date and is barred.

The Conaways also raise the discovery rule laid down by the Texas Supreme Court in *Neagle v. Nelson*, 685 S.W.2d 11, 12 (Tex.1985); *Nelson v. Krusen*, 678 S.W.2d 918 (Tex.1984). These decisions were premised on situations in which it was impossible for the parties to discover the injury within the two-year period. The Conaways admit that they had reason to know of Chambers' negligence on March 16, 1988, when the cancer was diagnosed. If on June 16, 1986, as Chambers contends, he last treated Christine Conaway for the lump in her left breast, the Conaways would have had three months after they discovered the harm to have filed their cause of action. Thus, they did discover the injury within the two-year period.

The Conaways further argue that Chambers negligently omitted to treat the breast problem during the entire period between May 1986, and January 19, 1988. They contend that Chambers had a continuing obligation to follow up on the mammograms by obtaining a medical history, performing further diagnostic tests, reviewing Conaway's mammograms and sonograms with the radiologist, and discussing with Conaway the danger signs relating to breast cancer.

■ The wording of the medical malpractice act (TEX.REV.CIV.STAT.ANN. art.

4590i, § 10.01) permits the commencement of an action within two years from the occurrence of the breach or tort or from the date of the medical or health care treatment. The wording of the statute suggests that the action can be filed within two years from any one of these three beginning points: (1) the breach, or (2) tort, or (3) from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed. However, the Texas Supreme Court has ruled that the terms *breach* or *tort* are used to designate the act or omission on which the claim is founded and not the *accrual* of a right to a judicial remedy.[1] *Morrison v. Chan*, 699 S.W.2d 205 (Tex.1985).

In the case of *Atha v. Polsky*, 667 S.W.2d 307 (Tex.App.—Austin 1984, writ ref'd n.r.e.), Atha contended that the statute of limitation was tolled for so long as the patient-physician relationship existed, even if the relationship was unassociated with the medical malpractice claim. The court rejected this contention and found that the intention of the Legislature was to begin the running of the statute of limitations on the date of the particular tort or breach complained of or, if no specific date was ascertainable, on the date of the completion of *the particular medical treatment* that was the subject of the claim. *See also Vinklarek v. Cane*, 691 S.W.2d 108 (Tex.App.—Austin 1985, writ ref'd n.r.e.).

The provision for running the statute of limitations from the date the medical or health care treatment that was the subject of the claim is completed contemplates the situation wherein the patient's injury occurs during a course of treatment for a particular condition and the only readily ascertainable date is the last date of the treatment. *Kimball v. Brothers*, 741 S.W.2d 370 (Tex.1987).

We must now determine if the Conaways filed suit within two years of the breach or tort. There is a statute of limitations principle in Texas in cases involving a continuing injury. A cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy. The fact that damage may continue to occur for an extended period after this accrual does not prevent the statute of limitations from starting to run. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826 (Tex.1990). On the other hand, if the wrongful act complained of is of a continuing nature, a plaintiff in effect has a new cause of action each time a wrongful act occurs, and the statute of limitations begins to run on each act when it occurs. *Twyman v. Twyman*, 790 S.W.2d 819 (Tex.App.—Austin 1990, no writ); *Harang v. Aetna Life Ins. Co.*, 400 S.W.2d 810 (Tex.Civ.App.—Houston [1st Dist.] 1966, writ ref'd n.r.e.). The Conaways invite the application of this rule by contending that the alleged negligent omission was a continuous tortious act.

The Conaways argue that because Christine Conaway needed to undergo tests and examinations periodically, the statute of limitations should be extended or begin

---

1. We are bound by this Supreme Court determination, but this writer would have found the legislative intent to be different. The Legislature had no need to use the term *tort* if it is synonymous with the term *breach*. There is no ambiguity in this language, and the Act clearly offers three alternative dates to commence the running of the statute of limitations. While the terms *the act* or *the omission* in this context would generally have the same meaning as the term *breach*, the term *tort* necessarily encompasses additional elements. A necessary element of a tort is harm. *See Galveston, H. & S.A. Ry. Co. v. Hennigan*, 33 Tex.Civ.App. 314, 76 S.W. 452 (1903, no writ). The tort is the commission or omission of an act by one without right whereby another receives some injury.

Fundamental tort law requires three essential elements for a tort: (1) a duty, (2) a breach of that duty, and (3) damages proximately resulting therefrom. A tort does not occur until there are some damages, however slight.

The failure to medically treat a person is not of itself a legal injury. It is only when this failure or omission results in injury that it may become a tort. *Atkins v. Crosland*, 417 S.W.2d 150 (Tex.1967). Limitation is a creature of statute, and the Legislature by using the term *tort* gave the plaintiff the alternative of calculating the statute of limitations from the date of the existence of a tort. This would have necessitated establishing a beginning point when Christine Conaway had some injury as a result of the doctor's omissions.

anew each time that she should have received such further examination and treatment. Under this approach, the statute of limitations would be extended for the duration of her need for treatment.

In interpreting the medical malpractice statute, the Supreme Court in *Morrison v. Chan*, 699 S.W.2d 205, found that the Legislature had adopted an absolute two-year period which begins to run, at the latest, when the treatment upon which the claim is based is completed. Based upon this interpretation, the statute cannot be construed to extend or renew the limitation period to a time when the physician was no longer treating the patient for a particular ailment but should have been.

 If a doctor undertakes continuous treatment or further treatment of a patient's condition and due to his negligence fails to properly handle the follow-up treatments, there is no question that the statute of limitations would begin to run at the time of this negligence. If, however, the doctor or the patient by his words or conduct terminates further treatment of the condition, the fact that the patient may have needed further medical treatment would not so extend or renew the statute of limitations. A failure to advise a patient that future treatment was needed would be an act or omission attributable to the time that the doctor should have so advised the patient. This, however, does not extend to a future time at which the doctor should have undertaken additional treatment and did not.

The affidavit of Dr. Edward A. Spoll states:

> Under such circumstances, *a primary family doctor*, such as Dr. George H. Chambers, *was responsible for monitoring the health and medical needs of his patient*, including not only addressing those specific complaints made by a patient but also caring for, monitoring and treating those conditions of which he had notice, i.e. Christine Conaway's complaints of a lump in her left breast, *regardless of whether or not the patient volunteered specific complaints with regard to such condition.* Under the

circumstances, Dr. Chambers' failure to follow-up, monitor and make inquiry with regard to Christine Conaway's condition from June, 1986 through January, 1988, constituted a breach of the standard of care to be rendered by such a physician to his patient and a breach of that degree of care which an ordinarily prudent physician would have used under the same or similar circumstances. Such breach delayed the discovery of Christine Conaway's breast cancer until it had reached a significantly advanced stage and thereby severely reduced her chances for survival and avoiding ultimate recurrence of such cancer.

(Emphasis added.)

 According to summary judgment evidence, the last statement made to Christine Conaway about the breast condition was, "Well, I see your breast is all right." A material fact issue exists as to whether Chambers or Christine Conaway by words or conduct terminated the treatment of her breast condition. If Chambers was still treating Conaway for this condition at the time of her later office visits to Chambers, then the statute of limitations would begin to run from any omission established on those dates.

Chambers has not shown as a matter of law that this suit is barred by limitations. The judgment of the trial court is reversed, and the case is remanded for a trial on the merits.

BLEIL, Justice, concurring.

I join in the decision of the Court, but express no opinion on the legislative intent behind the Medical Liability and Insurance Improvement Act (Tex.Civ.Prac. & Rem. Code Ann. art. 4590i, § 10.01 (Vernon Supp. 1991), or the comments about the decision in *Morrison v. Chan*, 699 S.W.2d 205 (Tex. 1985), found in footnote 1 of the majority opinion.