In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00140-CV


______________________________




KIMBERLY RICE, ET AL., Appellants



V.



LOUIS A. WILLIAMS & ASSOCIATES, INC., ET AL., Appellees




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 99-0899




 




Before Grant, Ross, and Cornelius,* JJ.


Opinion by Justice Ross


*Chief Justice William J. Cornelius, Retired, Sitting by Assignment



O P I N I O N



 Kimberly Rice, acting individually and as next friend of Kara Garrett, Gala Rice, and
Kourtney Martin (collectively, the Rice Appellants), along with Tri-State Pipe & Equipment,
Inc., Tri-State Exploration & Production, Inc., Tri-State Well Services, Inc., James Tellgren,
and James Stuart (collectively, the Tri-State Appellants) appeal the summary judgment
granted in favor of Louis A. Williams & Associates, Inc. (Williams) and Agnor Insurance
Agency, Inc. (Agnor). Appellants sued Williams, Agnor, and Southern County Mutual
Insurance Company, (1) contending they failed to provide the legally required amount of
insurance for a tractor-trailer owned by Tri-State Exploration and leased to Tri-State Well. 
With respect to Williams and Agnor, Appellants alleged causes of action for negligence,
breach of fiduciary duty, and breach of contract. The trial court granted Williams and
Agnor's motion for summary judgment, which was based on the statute of limitations. 

 On appeal, Appellants contend the trial court erred in granting Williams and Agnor's
motion for summary judgment. They also contend the trial court abused its discretion in
overruling their motion for a continuance and in overruling their objections to Williams and
Agnor's summary judgment proof.

Factual Background


 Appellants sued Williams and Agnor, alleging Southern County issued a commercial
vehicle insurance policy with coverage up to $100,000.00 to Tri-State Pipe through
insurance agents Williams and Agnor, through whom the Tri-State Appellants regularly
purchased insurance. Before the policy was written, the Texas Railroad Commission
issued a requirement that all commercial vehicles operating in Texas have minimum
insurance coverage of $500,000.00. Later, Tri-State Exploration purchased additional
tractor-trailers and obtained, through Williams and Agnor, an endorsement to Tri-State
Pipe's policy that insured the additional vehicles for up to $100,000.00. 

 On May 15, 1995, one of Tri-State Exploration's tractor-trailers was involved in a
major collision with the Rice Appellants. The Rice Appellants suffered severe and
permanent injuries in the collision and sued the Tri-State Appellants for negligence. On
May 22, 1995, Williams informed Tri-State Pipe that the coverage limit of its policy was
$100,000.00 and that Southern County would not be responsible for settlement of claims
or any judgment for claims in excess of $100,000.00. On June 9, 1995, Williams informed
Stuart (the owner of the Tri-State entities) and Tri-State Pipe that "[p]reliminary indications
are that [the Rice Appellants'] injuries, special damages and general damages could
exceed the [$100,000.00] limit." 

 On July 24, 1995, Williams notified Tri-State Exploration that Southern County
would not tender a defense to them in the Rice Appellants' negligence suit. In the same
letter, Williams indicated Southern County would defend Tri-State Pipe and Tellgren (the
driver of the tractor-trailer). On January 8, 1996, Williams notified Stuart that Southern
County would tender a defense to him under a reservation of rights. On July 2, 1996,
Williams notified Tellgren that Southern County would continue in his defense under a
reservation of rights. 

 On August 20, 1996, Tri-State Exploration and Tri-State Well demanded Southern
County provide them a defense in the Rice Appellants' negligence suit. On October 2,
1996, Southern County agreed, under a reservation of rights, to provide such defense
under the condition that Tri-State Exploration and Tri-State Well pay half their attorney's
fees. On May 22, 1997, Tri-State Exploration and Tri-State Well agreed to the terms
proposed by Southern County, as indicated by their attorney's signature on a letter faxed
to Southern County's attorney. 

 Beginning July 8, 1996, and culminating May 5, 1997, Southern County made four
offers to settle the Rice Appellants' claims for $95,000.00, the amount remaining under the
policy. Beginning July 19, 1996, the Rice Appellants rejected Southern County's
settlement offers and demanded $495,000.00 to settle their claims. On July 11, 1997, the
Rice Appellants obtained a judgment in excess of $2.25 million against the Tri-State
Appellants, jointly and severally. 

 On September 6, 1996, while the Rice Appellants' negligence suit was pending,
Southern County filed a declaratory judgment action against Tri-State and the Rice
Appellants, seeking a determination of how much coverage was available under the policy. 
On August 19, 1998, the trial court granted summary judgment in favor of Southern
County, ruling there was $100,000.00 available under the policy. The trial court also
permanently enjoined Tri-State and the Rice Appellants "from filing any other claim or
action against Southern County . . . directly or indirectly, involving the insurance proceeds
and claims at issue in this litigation or in connection with the underlying suit and/or the
motor vehicle accident made the basis of the underlying suit." On December 2, 1999, this
Court affirmed the trial court's ruling with respect to the coverage available under the
policy, but held the anti-suit injunction was improper. Tri-State Pipe & Equip., Inc. v.
S. County Mut. Ins. Co., 8 S.W.3d 394, 400, 402 (Tex. App.-Texarkana 1999, no pet.).

 Appellants filed suit against Williams and Agnor on June 3, 1999. The trial court
granted summary judgment on May 18, 2001.

Standard of Review

 Williams and Agnor moved for summary judgment under Tex. R. Civ. P. 166a(b). 
To prevail on such a motion, the movant must establish that there is no genuine issue of
material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ.
P. 166a(c). Summary judgment for a defendant is proper when such defendant negates
at least one element of each of the plaintiff's theories of recovery, or pleads and
conclusively establishes each element of an affirmative defense. Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997). When reviewing a summary judgment, we
take as true all evidence favorable to the nonmovant. Rhone-Poulenc, Inc. v. Steel, 997
S.W.2d 217, 223 (Tex. 1999). We indulge every reasonable inference and resolve any
doubt in the nonmovant's favor. Id. On appeal, the movant still bears the burden of
showing that there is no genuine issue of material fact and that the movant is entitled to
judgment as a matter of law. Id.

 Because Williams and Agnor moved for summary judgment on the ground of the
statute of limitations, they must have (1) conclusively proved when the cause of action
accrued, and (2) negated the discovery rule, if it applies and was pled or otherwise raised,
by proving as a matter of law there is no genuine issue of material fact about when
Appellants discovered, or in the exercise of reasonable diligence should have discovered,
their cause of action. See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988
S.W.2d 746, 748 (Tex. 1999). If Williams and Agnor established that the action was barred
by the statute of limitations, Appellants must then have adduced summary judgment proof
raising a fact issue in avoidance of the statute of limitations.  See id.

The Limitations Periods

 We first address the relevant limitations period for each of Appellants' claims. A
cause of action for negligence is governed by a two-year statute of limitations. Tex. Civ.
Prac. & Rem. Code Ann. § 16.003(a) (Vernon Supp. 2002). A cause of action for breach
of contract is governed by a four-year statute of limitations. Tex. Civ. Prac. & Rem. Code
Ann. § 16.004(a)(3) (Vernon Supp. 2002). Appellants contend a cause of action for breach
of fiduciary duty is governed by a four-year statute of limitations; Williams and Agnor
contend a two-year statute of limitations applies.

 Before 1999, there was a split of authority among the courts of appeals regarding
the applicable statute of limitations for breach of fiduciary duty claims. (2) In 1999, the Texas
Legislature amended Section 16.004 of the Texas Civil Practice and Remedies Code to
establish a four-year statute of limitations for breach of fiduciary duty. See Act of May 26,
1999, 76th Leg., R.S., ch. 950, § 1, 1999 Tex. Gen. Laws 3687.

 Section 2 of the Act provides, "The intent of this Act is to clarify existing law by
resolving a conflict in case law concerning the applicable statute of limitations for actions
for fraud and breach of fiduciary duty." Id. at § 2(a). Further, the bill analysis for House
Bill 2456 indicates the Legislature intended to codify the holding of the Texas Supreme
Court in Williams v. Khalaf, 802 S.W.2d 651 (Tex. 1990), that "Section 16.004 . . .
[establishes] a four-year statute of limitations for fraud and breach of fiduciary duty." (3) Tex.
H.B. 2456, 76th Leg., R.S. (1999).

 Our research revealed no cases after Williams in which a court held fraud was
governed by a two-year statute of limitations. But, as mentioned previously, there was a
split among the courts concerning the statute of limitations for breach of fiduciary duty
claims. Therefore, if the Legislature was attempting to resolve a conflict among the courts,
as Section 2 of the Act amending Section 16.004 indicates, then it was most likely the
conflict regarding the statute of limitations for breach of fiduciary duty claims the
Legislature was attempting to resolve. Thus, the legislative history of Section 16.004(a)(5)
demonstrates the Legislature's understanding that Section 16.004 always applied a four-year statute of limitations to breach of fiduciary duty claims.

 Further, even if the four-year statute of limitations did not always apply to breach of
fiduciary duty claims, as the legislative history of Section 16.004(a)(5) indicates it did,
Section 16.004(a)(5) still governs the present case. Generally, a statute is presumed to
operate prospectively unless expressly made retrospective. Tex. Gov't Code Ann.
§ 311.022 (Vernon 1998); see also Tex. Const. art. I, § 16. Texas courts apply statutes
retrospectively only if "it appears by fair implication from the language used that it was the
intention of the Legislature to make it applicable to both past and future transactions." 
State v. Humble Oil & Ref. Co., 141 Tex. 40, 169 S.W.2d 707, 708-09 (1943). Further, a
statute may operate retrospectively only when no impairment of vested rights results. 
Merchs. Fast Motor Lines, Inc. v. R.R. Comm'n, 573 S.W.2d 502, 504 (Tex. 1978).

 On the other hand, changes in statutes affecting remedies or procedures may be
applied retrospectively. Tyra v. City of Houston, 822 S.W.2d 626, 627 (Tex. 1991); Holder
v. Wood, 714 S.W.2d 318, 319 (Tex. 1986). This is because a litigant does not have a
vested right in a procedural remedy. Merchs. Fast Motor Lines, Inc., 573 S.W.2d at 505. 
Statutes of limitations are procedural, Baker Hughes, Inc. v. Keco R. & D., Inc., 12 S.W.3d
1, 4 (Tex. 1999), and bar the remedy by which one party seeks to enforce his or her
substantive rights. Jackson v. Thweatt, 883 S.W.2d 171, 176 (Tex. 1994).

 The above exception has its own exception. A procedural statute cannot be applied
in a suit pending at the time it becomes effective if to do so would destroy or impair rights
that had become vested after the act became effective. Baker Hughes, Inc., 12 S.W.3d
at 4 (quoting Wilson v. Work, 122 Tex. 545, 62 S.W.2d 490, 490 (1933) (per curiam)). 
Consequently, after a cause of action is barred by a statute of limitations, a defendant has
a vested right to rely on such a statute as a defense if his or her suit is pending at the time
the statute of limitations became effective. Id.

 In the present case, Appellants' suit was pending August 30, 1999, the date the
amendment to Section 16.004 became effective. Therefore, if Appellants' breach of
fiduciary claim was barred by a two-year statute of limitations, as Williams and Agnor
contend, the amendment could not have operated to enlarge the statute of limitations from
two years to four years. But, as mentioned previously, whether a breach of fiduciary duty
claim was governed by a two-year or four-year statute of limitations was far from a settled
issue at the time Appellants filed their suit. Therefore, Williams and Agnor did not have a
vested right to rely on a two-year statute of limitations. Appellants' breach of fiduciary duty
claim is governed by a four-year statute of limitations.

Accrual of Causes of Action

 The main dispute in this case is when Appellants' causes of action accrued. In
Atkins v. Crosland, 417 S.W.2d 150 (Tex. 1967), the Texas Supreme Court held a
taxpayer's negligence cause of action against his tax accountant accrued when the
taxpayer received a notice of deficiency from the Internal Revenue Service (IRS). The
court explained that, because the accountant's method of reporting income was not "in
itself the type of unlawful act which, upon its commission, would set the statute in motion,"
the taxpayer did not suffer injury until he received the deficiency notice.  Id.

 In Murphy v. Campbell, 964 S.W.2d 265, 269-70 (Tex. 1997), another accountant
malpractice case, the taxpayers contended limitations began to run when all litigation in tax
court was completed and the IRS issued an assessment of taxes; the accountants
contended limitations began to run when the taxpayers knew or should have known of the
faulty advice and no later than when the IRS issued a formal deficiency notice. The Texas
Supreme Court held that a person suffers legal injury from faulty professional advice when
the advice is taken, but that the discovery rule may apply to delay accrual of a cause of
action because of the difficulty a lay person has in knowing of the fault in the advice. Id.
at 270.

 In Murphy, the court held the cause of action did not accrue when the injury became
certain, as the taxpayers contended, but when the taxpayers knew or should have known
of their injury. Id. at 271. Under the facts in Murphy, as in Atkins, the taxpayers obtained
such knowledge when the IRS issued a formal deficiency notice. Id. However, the court
stated such knowledge could be obtained earlier, e.g., if the taxpayers sought other
opinions on receiving an audit notice. Id.

 In fact, responding to a dissenting opinion, the court stated, "The fact that the
plaintiff's actual damages may not be fully known until much later does not affect the
determination of the accrual date for alleged accounting malpractice any more than it does
for legal malpractice." Id. at 273. The court also stated, in response to a dissenting
opinion, which contended limitations should begin when litigation in tax court was
concluded, "While it may be necessary to abate a malpractice suit pending resolution of
a dispute with the taxing authority, we view that procedure as preferable to holding that
limitations on a plaintiff's claim begins to run when plaintiff decides it should." Id.

 In Johnson & Higgins v. Kenneco Energy, Inc., 962 S.W.2d 507, 512 (Tex. 1998),
an oil trading company sought to insure its expected profit from an oil shipment and against
the possibility its primary insurance carrier would fail to pay potential claims involving that
shipment. The oil trading company sued its insurance agent over two years after the
insurance company denied coverage under certificates of insurance written by the agent. 
Id.

 The Texas Supreme Court stated, "A cause of action generally accrues, and the
statute of limitations begins to run, when facts come into existence that authorize a
claimant to seek a judicial remedy." Id. at 514. The court held the cause of action accrued
when the insurance company denied coverage because all facts required for a cause of
action against the agent existed at that time. Id.

 In support of its contention that the cause of action accrued when the litigation
against the insurance company was completed, the oil trading company cited Atkins. Id.
at 515. In contrast with its position in Murphy, in which it held the taxpayers were injured
when they took their accountants' faulty professional advice, the court stated that in Atkins
the taxpayer was injured when he received the deficiency notice from the IRS. Id. The
court then observed the oil trading company in Johnson & Higgins was also injured when
its claim was denied because it then had sufficient facts available to seek a judicial remedy
against its agent. Id.

 Williams and Agnor contend a cause of action accrues when a party is confronted
with a specific and concrete risk of harm to the party's interest, citing State Farm Life Ins.
Co. v. Swift, 129 F.3d 792, 795-96 (5th Cir. 1997), and Hoover v. Gregory, 835 S.W.2d
668, 672-74 (Tex. App.-Dallas 1992, writ denied). The origin for the "risk of harm"
language is found in Zidell v. Bird, 692 S.W.2d 550 (Tex. App.-Austin 1985, no writ), a
legal malpractice case.

 In Zidell, the court discussed the "legal injury rule," distinguishing between two types
of conduct: "lawful acts," or those cases in which the defendant's conduct is not wrongful
in itself, giving the plaintiff no immediate right of action, and "unlawful acts," or those cases
in which the defendant's conduct is wrongful in itself, giving the plaintiff an immediate right
of action. Id. at 554-55. In "unlawful acts" cases, the injury is immediate and the cause
of action accrues then; in "lawful acts" cases, the cause of action accrues when an
invasion of the plaintiff's interests occurs, i.e., when the plaintiff is injured. Id. at 555.

 The Zidell court states:

 A familiar analytical assumption in [cases, beginning with Atkins v. Crosland,
that have applied the legal injury rule] is that the defendant's act was or was
not originally "unlawful," with no explanation being given of how that
assumption was justified under applicable law.


Zidell, 692 S.W.2d at 556. Such an assumption was in play in Murphy when the Texas
Supreme Court held, "A person suffers legal injury from faulty professional advice when
the advice is taken." Murphy, 964 S.W.2d at 270. Zidell then goes on to state:

 The common ground in these cases [that have applied the legal injury rule]
is, however, that the plaintiff's cause of action did not accrue until a specific
event, occurring subsequent to the date of the defendant's conduct and
caused thereby, made it apparent that some legally protected interest in the
plaintiff had indeed been exposed to a specific and concrete risk of harm
which had theretofore remained only a logically possible consequence of the
defendant's conduct.


Zidell, 692 S.W.2d at 556 (emphasis added). This "risk of harm" language has been
applied in numerous other Texas cases, all of which involve professional malpractice. (4)

 But the "risk of harm" language was not utilized in Murphy, which also involved
professional malpractice. (5) Rather, the Murphy court held a person suffers legal injury from
faulty professional advice, not when it is apparent there is a risk of harm to his or her
interests, but when the advice is taken, even though the discovery rule may delay accrual
of a cause of action until the person knows or should know of his or her injury. Murphy,
964 S.W.2d at 270-71. In contrast, in Johnson & Higgins, a case not involving professional
malpractice or the discovery rule, the court held the cause of action accrues when facts
come into existence that authorize a claimant to seek a judicial remedy. Johnson &
Higgins, 962 S.W.2d at 514.

 Williams and Agnor contend Appellants' causes of action accrued as early as
May 22, 1995, the day on which Williams informed the Tri-State Appellants that Southern
County would not be responsible for amounts in excess of the $100,000.00 policy limit. 
They also contend Southern County confirmed its position in numerous communications
with the Tri-State Appellants, in settlement talks with the Rice Appellants, and in its refusal
to tender a defense to Tri-State Exploration and Tri-State Well. They contend Appellants'
causes of action accrued no later than September 6, 1996, the date on which Southern
County filed its declaratory judgment action.

 Appellants contend their causes of action did not accrue until May 27, 1997, the day
on which the judgment, which was in excess of the $100,000.00 policy limit, was signed
in the Rice Appellants' suit against the Tri-State Appellants. Until that day, they contend,
the fact of an injury had not been established because there was not a judgment in the
Rice Appellants' negligence suit.

 When there is no outright denial of a claim, the exact date of accrual of a cause of
action becomes more difficult to ascertain and should be a question of fact to be
determined on a case-by-case basis. Murray v. San Jacinto Agency, Inc., 800 S.W.2d
826, 828 n.2 (Tex. 1990). Recently, in All-Tex Roofing, Inc. v. Greenwood Ins. Group, Inc.,
73 S.W.3d 412 (Tex. App.-Houston [1st Dist.] 2002, no pet. h.), the Houston Court of
Appeals addressed a similar issue. In that case, the appellees arranged to provide
insurance for the appellant with a company that ultimately became insolvent. Id. at 414. 
Later, a judgment in a personal injury suit was rendered against the appellant, which it
contended would have been covered under the policy written by the insolvent insurer. Id.

 In reversing summary judgment for the appellees based on limitations, the court of
appeals held the appellant's cause of action did not accrue until judgment was rendered
in the underlying personal injury suit. Id. at 415. Until then, the court reasoned, the
appellant did not know what the amount of the eventual claim would be, if any, and had not
yet filed a claim. Id. The court concluded Johnson & Higgins was distinguishable because,
in that case, the oil trading company knew the amount of its lost profit and had filed a
claim, which had been denied. Id.

 We are persuaded by the Houston court's reasoning in All-Tex Roofing. Though
Williams and Agnor correctly observe that a cause of action accrues even when the extent
of damages is not fully known, that rule says nothing about the accrual of a cause of action
when the injury has not occurred. Here, Appellants knew both the fact of the injury and the
extent of the damages at the same time, i.e., when the judgment was rendered in the Rice
Appellants' negligence suit. They could not have brought suit against Williams and Agnor
before then because there was always a chance, however remote, that judgment would
be rendered for less than $100,000.00, meaning they would have had no damages.

 Murphy is distinguishable. In Murphy, the Texas Supreme Court held that the
taxpayers' legal injury occurred when they took their accountants' faulty advice, but that
their cause of action accrued under the discovery rule when they knew or should have
known of their injury. Murphy, 964 S.W.2d at 270-71. The court held the taxpayers would
have had a cause of action when they took their accountants' advice, even though their
injury was not completely certain and even though they might have had to abate their suit
while their ultimate tax liability was litigated in tax court. See id. at 271, 273.

 This case is more like Johnson & Higgins, which did not turn on the application of
the discovery rule. If it had, then the oil trading company would have been injured when
its insurance agent failed to obtain the proper insurance, and its cause of action would
have accrued when it knew or should have known of its injury. In that instance, the oil
trading company's cause of action may still have accrued when the insurance company
rejected its claim, but the court's reasoning would have been different.

 Like the oil trading company in Johnson & Higgins, Appellants in the present case
were not injured when Williams and Agnor purportedly failed to obtain the proper
insurance. Had the Tri-State Appellants discovered the deficiency in their insurance
coverage before the Rice Appellants were injured, they would not have had a cause of
action against Williams and Agnor because they would have suffered no damages. In
short, it was when the judgment was rendered in the Rice Appellants' negligence suit that
facts came into existence authorizing Appellants to obtain a judicial remedy. See Johnson
& Higgins, 962 S.W.2d at 514.

 Ultimately, as the All-Tex Roofing court also concluded, the facts in Johnson &
Higgins are distinguishable from the present case. In Johnson & Higgins, the oil trading
company knew of its injury when its claim under its insurance policy was denied. Here, as
in All-Tex Roofing, there is no summary judgment proof Appellants made a claim against
the insurance policy or that Southern County denied such a claim.

 There is summary judgment proof that the Tri-State Appellants were aware of
Southern County's position that there was only $100,000.00 of available coverage under
the policy and that the Rice Appellants' injuries could exceed $100,000.00. But, as in All-Tex Roofing, Appellants had not made a claim in excess of $100,000.00. Therefore, they
had suffered no injury.

 Agnor contends our holding in Sabine Towing & Transp. Co. v. Holliday Ins. Agency,
Inc., 54 S.W.3d 57 (Tex. App.-Texarkana 2001, pet. denied), stands for the proposition
that Appellants' cause of action accrued when Williams and Agnor violated their purported
duty to obtain the proper insurance. In Sabine, a shipowner sued an insurance agent
under theories of negligent misrepresentation and violations of Article 21.21 of the Texas
Insurance Code stemming from the insurance agent's representation that the shipowner's
subcontractor had an insurance policy that would insure the shipowner against injury
claims by employees of the subcontractor. Id. at 58. This Court held the discovery rule did
not operate to delay the accrual of the shipowner's cause of action; therefore, limitations
barred its suit. Id. at 61-63.

 On rehearing, the shipowner contended we erred in holding its Article 21.21 cause
of action was barred by limitations and cited Johnson & Higgins, Celtic Life Ins. Co. v.
Coats, 885 S.W.2d 96 (Tex. 1994), and Gilbreath v. White, 903 S.W.2d 851 (Tex.
App.-Texarkana 1995, no writ). Id. at 64. We distinguished Johnson & Higgins and Celtic
Life Insurance Co. on the basis that those cases involved a first-party insured suing its
agent, but the shipowner was a third-party insured suing its subcontractor's agent. Sabine
Towing & Transp. Co., 54 S.W.3d at 64-65.

 In Gilbreath, this Court held the insured's cause of action against his agent accrued
when the insurance company denied his claim, not when the property damage occurred
that prompted his claim. Gilbreath, 903 S.W.2d at 856. In Sabine, we distinguished
Gilbreath as involving not an issue of whether coverage existed, but whether coverage was
properly denied. Sabine Towing & Transp. Co., 54 S.W.3d at 66. We also distinguished
Gilbreath on the basis that the parties could not have known the insurance company would
deny coverage, but that the shipowner in Sabine could readily ascertain the existence of
insurance coverage. Id.

 The present case is distinguishable from Sabine. First, as we observed in Sabine,
that case involved a third-party insured, not a first-party insured. Therefore, our case is
more closely analogous to Johnson & Higgins and Celtic Life Insurance Co. than to Sabine. 
Second, our case also involves the denial of coverage, as was the case in Gilbreath.

 Agnor contends the present case involves the denial of $400,000.00 of insurance
coverage, i.e., the difference between $500,000.00 required by the Railroad Commission
and $100,000.00 under the policy. But the present case is not one in which there was no
coverage, as was true in Sabine. Rather, the Tri-State Appellants had some insurance
coverage, but there was a dispute concerning the amount.

 Williams and Agnor also contend that, even if Appellants' causes of action accrued
when their injury became certain, the Tri-State Appellants sustained injury (1) July 24,
1995, when Southern County denied a defense to Tri-State Exploration in the Rice
Appellants' negligence suit; (2) August 20, 1996, when Tri-State Exploration and Tri-State
Well demanded Southern County provide a defense and indicated they were expending
substantial funds on legal fees; (3) October 2, 1996, when Southern County agreed, under
a reservation of rights, to provide such defense on the condition that Tri-State Exploration
and Tri-State Well pay half their attorney's fees; and/or (4) May 25, 1997, when Tri-State
Exploration and Tri-State Well accepted Southern County's offer. Appellants contend there
is no summary judgment proof Tri-State Exploration or Tri-State Well paid any attorney's
fees.

 We need not resolve this issue. The summary judgment proof shows Southern
County denied Tri-State Exploration and Tri-State Well a defense because they were not
listed as insureds under the policy. Assuming they sustained an injury when Southern
County declined to defend them, such injury would not constitute facts authorizing them
to seek a remedy against Williams and Agnor for failing to obtain the proper amount of
insurance. This would be true even if Southern County wrongfully denied them a defense. 
At best, the denial of a defense would constitute facts authorizing them to seek a judicial
remedy against someone, not necessarily Williams and Agnor, for failing to list them as
insureds under the policy.

 But even if Williams and Agnor's assertion is correct, summary judgment was still
inappropriate with respect to Tri-State Pipe, Stuart, and Tellgren. The summary judgment
proof shows Southern County agreed to provide a defense to each of these Appellants. 
Therefore, even if the denial of a defense would constitute facts authorizing them to seek
a judicial remedy against Williams and Agnor for failing to obtain the proper amount of
insurance, there is no summary judgment proof they sustained such an injury.

 Williams and Agnor also would not have been entitled to summary judgment on Tri-State Exploration's and Tri-State Well's causes of action for breach of fiduciary duty and
breach of contract, even if Southern County's refusal of a defense constituted the type of
legal injury that would accrue a cause of action for failure to obtain proper insurance. As
mentioned previously, a cause of action for breach of fiduciary duty and breach of contract
are each governed by a four-year statute of limitations. The earliest date Williams and
Agnor allege the cause of action could have accrued based on the denial of a defense is
July 24, 1995, within four years of the date Appellants filed suit.

 Finally, Williams and Agnor would not have been entitled to summary judgment on
Tri-State Exploration's and Tri-State Well's causes of action for negligence. As mentioned
previously, a cause of action for negligence is governed by a two-year statute of limitations. 
Each of the dates Williams and Agnor allege Appellants' cause of action could accrue
based on Southern County's denial of a defense to Tri-State Exploration and Tri-State Well
is over two years from the date Appellants filed suit.

 However, a fact issue remains concerning whether the statute of limitations was
tolled from August 19, 1998, the date the trial court imposed the anti-suit injunction
following Southern County's declaratory judgment action, to December 2, 1999, the date
this Court held the anti-suit injunction was improper. That injunction enjoined Tri-State and
the Rice Appellants "from filing any other claim or action against Southern County . . .
directly or indirectly, involving the insurance proceeds and claims at issue in this litigation
or in connection with the underlying suit and/or the motor vehicle accident made the basis
of the underlying suit." The tolling of a statute of limitations is recognized in equity when
a person is prevented from exercising his or her legal remedy by the pendency of legal
proceedings. Hughes v. Mahaney & Higgins, 821 S.W.2d 154, 157 (Tex. 1991).

 Williams and Agnor contend the injunction, by its terms, pertains only to suits
against Southern County. Appellants contend that the injunction enjoined them from filing
suit against Southern County directly or indirectly, and that Williams and Agnor offered no
summary judgment proof showing the relationship between Williams, Agnor, and Southern
County so as to negate the theory that a suit against Williams and Agnor is an indirect suit
against Southern County.

 A movant for summary judgment has the burden of negating the applicability of a
tolling provision raised by his or her opponent. Jennings v. Burgess, 917 S.W.2d 790, 793
(Tex. 1996); see also Enciso v. Chmielewski, 16 S.W.3d 858, 860 (Tex. App.-Houston
[14th Dist.] 2000, no pet.) (treating movant as having burden to negate nonmovant's
assertion of tolling provision in Tex. Civ. Prac. & Rem. Code Ann. § 16.001(a) (Vernon
Supp. 2002) (legal disability)); Louis v. Disc. Tire Co., 1 S.W.3d 698, 699 (Tex.
App.-Amarillo 1999, no pet.) (movant for summary judgment had burden to negate
nonmovant's assertion of tolling provision in Tex. Civ. Prac. & Rem. Code Ann. § 16.063
(Vernon 1997) (temporary absence from state)); Min v. Avila, 991 S.W.2d 495, 504 (Tex.
App.-Houston [1st Dist.] 1999, no pet.) (movant for summary judgment had burden to
negate nonmovant's assertion of tolling provision in Soldiers and Sailors Civil Relief Act). 
In this case, Appellants raised the tolling issue in response to Williams and Agnor's motion
for summary judgment. Williams and Agnor did not respond with summary judgment proof
negating the theory that a suit against them was an indirect action against Southern
County.

 Because a fact issue remains concerning whether the limitations period was tolled
beginning August 18, 1998, summary judgment was inappropriate on Tri-State
Exploration's and Tri-State Well's causes of action for negligence if their causes of action
accrued before August 18, 1996. If, as Williams and Agnor contend, Southern County's
denial of a defense to Tri-State Exploration and Tri-State Well constituted a legal injury
such that their cause of action for failure to obtain proper insurance would accrue, then all
but one of the dates Williams and Agnor alleged as the date of injury are within the
limitations period.

 The question is whether a fact issue remains concerning the one date that is not
within the limitations period: July 24, 1995, the date on which Southern County first denied
Tri-State Exploration a defense in the Rice Appellants' negligence suit. In Delgado v.
Burns, 656 S.W.2d 428, 428 (Tex. 1983), the appellant sued her doctor after he performed
a hysterectomy on her and left surgical staples inside her body. The parties stipulated that
the appellant's last post-operative checkup was December 8, 1975, and that the patient
was not aware of the staples until February 3, 1978. Id. The Texas Supreme Court held
the doctor was not entitled to summary judgment because he failed to prove which of the
two dates, one inside the statute of limitations and one outside, was the last day of
treatment. Id. at 429.

 In Conaway v. Chambers, 823 S.W.2d 331, 332 (Tex. App.-Texarkana 1991), aff'd,
Chambers v. Conaway, 883 S.W.2d 156 (Tex. 1993), the appellant sued her doctor for
failing to diagnose her breast cancer. A statute prescribed two relevant times in which
limitations could begin: (1) the date the breach or tort occurred, or (2) the date the
treatment was completed. See Chambers, 883 S.W.2d at 158. Our opinion focused on
the latter.

 The doctor contended the statute of limitations began running June 16, 1986, the
last date on which there was communication between doctor and patient regarding the
condition of her breast, and therefore the date her treatment was completed. See
Conaway, 823 S.W.2d at 333. The patient contended limitations began running during the
period from May 1986 through January 19, 1988, the period in which she continued to see
the doctor for other unrelated problems. Id. We held there was a fact question concerning
whether, by words or conduct, either party terminated the treatment of the patient's breast
condition. Id. at 335.

 On appeal, the Texas Supreme Court affirmed our judgment, but not our reasoning. 
Chambers, 883 S.W.2d at 157. The court focused on the date the breach or tort occurred. 
The court held the evidence, when viewed in the light most favorable to the patient,
showed the cause of action accrued January 19, 1988, the last date on which the doctor
could have but failed to provide appropriate follow-up examinations after his earlier tests
on the patient's breast. Id. at 158. Significantly, the court held this Court erred in
concluding there was a fact question because "determining when treatment has concluded
. . . simply amounts to deciding when a plaintiff's cause of action accrues, [a] question . . .
of law and not fact." Id. at 159.

 It is difficult to reconcile the Texas Supreme Court's holdings in Delgado and
Chambers, and its statement in Murray that "when . . . there is no outright denial of a claim,
the exact date of accrual of a cause of action becomes more difficult to ascertain and
should be a question of fact to be determined on a case-by-case basis." Murray, 800
S.W.2d at 828 n.2. After considering these cases, however, we conclude the summary
judgment proof does not establish Williams' and Agnor's entitlement to summary judgment
on Tri-State Exploration's and Tri-State Well's negligence claims based on the running of
the statute of limitations.

 First, the summary judgment proof shows that, at best, Southern County did not
deny Tri-State Well a complete defense until May 25, 1997, the day when Tri-State
Exploration and Tri-State Well agreed to Southern County's offer to pay half their attorney's
fees. Second, though Southern County indicated by July 24, 1995, it was denying a
defense to Tri-State Exploration, the summary judgment proof indicates that position was
subject to negotiation, as Southern County eventually agreed to pay one half of Tri-State
Exploration's attorney's fees, which would have included any attorney's fees Tri-State
Exploration had already expended in defense of the Rice Appellants' negligence suit.

Conclusion

 The trial court rendered judgment in the Rice Appellants' negligence suit July 11,
1997. This was the date on which Appellants had sufficient facts available to seek a
judicial remedy against Williams and Agnor. Appellants filed suit against Williams and
Agnor June 3, 1999, within the two-year statute of limitations for negligence and the four-year statutes of limitations for breach of fiduciary duty and breach of contract. Therefore,
summary judgment was inappropriate on their claims.

 We need not consider Appellants' contentions that the trial court abused its
discretion in overruling their motion for a continuance and their objections to certain
statements contained in Williams and Agnor's summary judgment proof.

 We reverse the trial court's judgment and remand this case to that court for further
proceedings.


 Donald R. Ross

 Justice


Date Submitted: May 16, 2002

Date Decided: September 13, 2002


Publish

1. Appellants later nonsuited Southern County.
2. Compare McGuire v. Kelley, 41 S.W.3d 679, 682 (Tex. App.-Texarkana 2001, no
pet.) (four years when combined with fraud cause of action); Chandler v. Chandler, 991
S.W.2d 367, 394 (Tex. App.-El Paso 1999, pet. denied) (four years); In re Estate of
Herring, 970 S.W.2d 583, 587 (Tex. App.-Corpus Christi 1998, no pet.) (four years); Rowe
v. Rowe, 887 S.W.2d 191, 201 (Tex. App.-Fort Worth 1994, writ denied) (four years);
Spangler v. Jones, 797 S.W.2d 125, 132 (Tex. App.-Dallas 1990, writ denied), with
Maxson v. Travis County Rent Account, 21 S.W.3d 311, 319 (Tex. App.-Austin 1999, pet.
dism'd by agr.) (two years); Hendricks v. Thornton, 973 S.W.2d 348, 364 (Tex.
App.-Beaumont 1998, pet. denied) (two years); Farias v. Laredo Nat'l Bank, 985 S.W.2d
465, 471 (Tex. App.-San Antonio 1997, no pet.) (two years); Dickson Constr., Inc. v. Fid.
& Deposit Co., 960 S.W.2d 845, 849 (Tex. App.-Texarkana 1997, no pet.) (two years);
Smith v. Little, 903 S.W.2d 780, 786 (Tex. App.-Dallas 1995), aff'd in part & rev'd in part
on other grounds, 943 S.W.2d 414 (Tex. 1997) (two years); Smith v. Chapman, 897
S.W.2d 399, 402 (Tex. App.-Eastland 1995, no writ) (two years); Redman Indus., Inc. v.
Couch, 613 S.W.2d 787, 789 (Tex. Civ. App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.)
(two years).
3. An examination of Williams v. Khalaf, 802 S.W.2d 651 (Tex. 1990), does not
buttress the Legislature's apparent conclusion. In Williams, the Texas Supreme Court was
not confronted with the issue of the appropriate limitations period for breach of fiduciary
duty claims, but only with the question of the appropriate limitations period for fraud claims. 
 At that time, there was no statute of limitations directly applying to fraud claims, just as
there was no statute of limitations directly applying to breach of fiduciary duty claims before
1999. See id. at 654.

 Citing Gordon v. Rhodes & Daniel, 102 Tex. 300, 116 S.W. 40, 41-42 (1909), the
court characterized a fraud claim as an action on a debt not evidenced by a writing, which
at the time Gordon was written was governed by a two-year statute of limitations, but at the
time Williams was written was governed by a four-year statute of limitations. Williams, 802
S.W.2d at 654, 657. Therefore, the court held a four-year statute of limitations applied to
fraud claims. Id. at 657.

 Those courts before Williams that held breach of fiduciary duty claims were
governed by a two-year statute of limitations did so on the theory that those claims are
actions in tort rather than actions for a debt not evidenced by a writing. See Black v. Wills,
758 S.W.2d 809, 814 (Tex. App.-Dallas 1988, no writ); Redman Indus., Inc. v. Couch, 613
S.W.2d 787, 789 (Tex. Civ. App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.). Arguably, the
Texas Supreme Court's reasoning in Williams-that fraud is an action for a debt not
evidence by a writing-would apply to breach of fiduciary duty.

 However, the court did not extend its reasoning regarding fraud claims to breach of
fiduciary duty claims. In fact, the court cautioned, "The process of making analogies to
common law forms of action to select a general limitation provision to apply is imperfect
at best, and also has produced different limitation periods for very similar causes of action." 
Williams, 802 S.W.2d at 656.

 The court may have made an oblique reference to breach of fiduciary duty in
Williams in discussing the continued vitality of its holding in Gordon. See Williams, 802
S.W.2d at 654. In Williams, the court cited the Houston court's use of Gordon as authority
in Andes v. Cagle, 468 S.W.2d 513 (Tex. Civ. App.-Houston [14th Dist.] 1971, writ ref'd
n.r.e.). In Andes, a husband sued his former wife and an investment company, claiming
they deprived him of his interest in two investment accounts the couple established. 
Andes, 468 S.W.2d at 514-15. Citing Gordon, the court held the claim against the
investment company was barred because "misconduct of an agent" was governed by
Article 5526, a predecessor to Section 16.004. Id. at 516-17.

 However, the precise nature of the agent's alleged misconduct in Andes is unclear. 
Was it fraud (i.e., a debt not evidenced by a writing) or conversion? At the time Andes was
written, a cause of action on a debt not evidenced by a writing and a cause of action for
conversion were both governed by Article 5526. See Williams, 802 S.W.2d at 656; Andes,
468 S.W.2d at 516. In 1979, the Legislature consolidated the statute of limitations for all
actions on debts into Article 5527. See Act of May 27, 1979, 66th Leg., R.S., ch. 716, § 1,
1979 Tex. Gen. Laws 1768 (repealed 1985) (current version at Tex. Civ. Prac. & Rem.
Code Ann. §§ 16.003, 16.004 (Vernon Supp. 2002)). Article 5527 was later incorporated
into Section 16.004. See Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex.
Gen. Laws 3242, 3252.

 Andes itself is unclear on the nature of the agent's alleged wrongdoing. In holding
that Article 5526 applied, the court of appeals cited three cases holding Article 5526 barred
causes of action for conversion and one case (Gordon) holding Article 5526 barred a
cause of action for fraud not evidenced by a writing. Andes, 468 S.W.2d at 516-17 (citing
Las Mendozas, Inc. v. Powell, 368 F.2d 445 (5th Cir. 1966) (conversion and, perhaps,
breach of fiduciary duty); Gordon, 116 S.W. 40 (fraud); Adams v. San Antonio Life Ins. Co.,
185 S.W. 610 (Tex. Civ. App.-Dallas 1916, writ ref'd) (conversion); Mut. Life Ins. Co. v.
Garland, 23 Tex. Civ. App. 380, 56 S.W. 551 (1900, no writ) (conversion)).

 Nevertheless, to the extent the Texas Supreme Court cited Andes to show Gordon
was still good law, it may have suggested "misconduct of an agent," which would
encompass breach of fiduciary duty, is governed by the same statute of limitations as that
for fraud.
4. See Eiland v. Turpin, Smith, Dyer, Saxe & McDonald, 64 S.W.3d 155, 158-59 (Tex.
App.-El Paso 2001, no pet.) (legal malpractice); Brents v. Haynes & Boone, L.L.P., 53
S.W.3d 911, 914-15 (Tex. App.-Dallas 2001, pet. denied) (legal malpractice); Burnap v.
Linnartz, 38 S.W.3d 612, 624 (Tex. App.-San Antonio 2000, no pet.) (legal malpractice);
Goggin v. Grimes, 969 S.W.2d 135, 137 (Tex. App.-Houston [14th Dist.] 1998, no pet.)
(legal malpractice); Hall v. Stephenson, 919 S.W.2d 454, 465 (Tex. App.-Fort Worth 1996,
writ denied) (legal malpractice); Sutton v. Mankoff, 915 S.W.2d 152, 157 (Tex. App.-Fort
Worth 1996, writ denied) (legal malpractice); Bankr. Estate of Rochester v. Campell, 910
S.W.2d 647, 651 (Tex. App.-Austin 1995), rev'd on other grounds sub nom., Murphy v.
Campbell, 964 S.W.2d 265 (Tex. 1997) (accountant malpractice); Ponder v. Brice &
Mankoff, 889 S.W.2d 637, 642-43 (Tex. App.-Houston [14th Dist.] 1994, writ denied) (legal
malpractice); Hoover v. Gregory, 835 S.W.2d 668, 673 (Tex. App.-Dallas 1992, writ
denied) (professional malpractice); Gulf Coast Inv. Corp. v. Brown, 813 S.W.2d 218, 221
(Tex. App.-Houston [14th Dist.] 1991), rev'd on other grounds, 821 S.W.2d 159 (Tex.
1991) (legal malpractice); Black v. Wills, 758 S.W.2d 809, 816 (Tex. App.-Dallas 1988, no
writ) (legal malpractice); Willis v. Maverick, 723 S.W.2d 259, 261 (Tex. App.-San Antonio
1986), aff'd, 760 S.W.2d 642 (1988) (legal malpractice).
5. In fact, the Texas Supreme Court largely repudiated the risk of harm language
when, in Murphy, it wrote in response to a dissenting opinion:


 [The] dissent mischaracterizes our application of the discovery rule as
holding that "an accounting malpractice cause of action accrues when a
taxpayer knows or should know of a mere risk of injury." . . . As in all
discovery rule cases, a cause of action accrues when the plaintiff knows or
reasonably should know that he has been legally injured by the alleged
wrong, however slightly.


Murphy, 964 S.W.2d at 273 (quoting Murphy, 964 S.W.2d at 274 (Spector, J, dissenting)).